(No. 91874.—■■■■■■■■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KENNETH SHARPE, Appellee.

*Opinion filed October 6, 2005.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee Goldfarb, Annette Collins, Veronica Calderon Malavia and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People.

Edwin A. Burnette, Public Defender, of Chicago (Protase M. Tinka, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE THOMAS delivered the opinion of the court:

This case involves the constitutionality of one of the "15/20/25-to-life" sentence-enhancement amendments. See Pub. Act 91—404, § 5, eff. January 1, 2000. Specifically, this court is called upon to evaluate the constitutionality of the sentencing enhancements in the context of first degree murder.

## BACKGROUND

Ordinarily, the baseline sentence for the crime of first degree murder is 20 to 60 years' imprisonment. 730 ILCS 5/5—8—1(a) (West 2000). In 2000, however, the legislature enacted Public Act 91—404, which amended the sentencing provisions of each of several different felonies, including first degree murder (see 730 ILCS 5/5—8—1(a)(1)(d)(i) through (a)(1)(d)(iii) (West 2000)), when a firearm is involved in the commission of the felony.[1] See Pub. Act 91—404, § 5, eff. January 1, 2000.

These amendments add a mandatory additional term

---

[1]Public Act 91—404 amended the following offenses: intentional homicide of an unborn child (see 720 ILCS 5/9—1.2 (West 2000)); aggravated kidnapping (see 720 ILCS 5/10—2 (West 2000)); aggravated battery of child (see 720 ILCS 5/12—4.3 (West 2000)); home invasion (see 720 ILCS 5/12—11 (West 2000)); aggravated criminal sexual assault (see 720 ILCS 5/12—14 (West 2000)); predatory criminal sexual assault of a child (see 720 ILCS 5/12—14.1 (West 2000)); armed robbery (see 720 ILCS 5/18—2 (West 2000)); aggravated vehicular hijacking (see 720 ILCS 5/18—4 (West 2000)); and armed violence (see 720 ILCS 5/33A—2 (West 2000)). Public Act 91—404 also amended the attempt statute (see 720 ILCS 5/8—4 (West 2000)) and added definitions of "armed with a firearm" (see 720 ILCS 5/2—3.6 (West 2000)), "firearm" (see 720 ILCS 5/2—7.5 (West 2000)), and "personally discharged a firearm" (see 720 ILCS 5/2—15.5 (West 2000)). Finally, Public Act 91—404 amended the Unified Code of Corrections, adding, *inter alia*, 15/20/25-to-life sentence enhancements to the sentence for first degree murder. See 730 ILCS 5/5—8—1(a)(1)(d)(i) through (a)(1)(d)(iii) (West 2000).

of years to whatever sentence would otherwise be imposed. The degree of enhancement depends upon the degree of involvement of the firearm. Commission of first degree murder while simply armed with a firearm adds a mandatory 15-year enhancement to the sentence (see 730 ILCS 5/5—8—1(a)(1)(d)(i) (West 2000)); personally discharging a firearm while committing first degree murder adds a mandatory 20-year enhancement (see 730 ILCS 5/5—8—1(a)(1)(d)(ii) (West 2000)); and personally discharging a firearm while committing first degree murder and proximately causing a death or severe bodily injury thereby requires that the circuit court increase the sentence by 25 years' up to life imprisonment (see 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000)).

In April 2001, defendant Kenneth Sharpe was indicted in the circuit court of Cook County on six counts of first degree murder in connection with the fatal shooting of Bernard Magett on March 13, 2001. The charges were broken down into three counts of intentional first degree murder (720 ILCS 5/9—1(a)(1) (West 2000)) and three counts of first degree murder knowing that he was creating a strong probability of death or great bodily harm (720 ILCS 5/9—1(a)(2) (West 2000)). One count of each type of first degree murder alleged that defendant committed the crime while armed with a firearm (see 730 ILCS 5/5—8—1(a)(1)(d)(i) (West 2000)), one count alleged that defendant committed the crime while personally discharging a firearm (730 ILCS 5/5—8—1(a)(1)(d)(ii) (West 2000)), and one count alleged that defendant committed the crime while personally discharging a firearm that proximately caused a death (730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000)).[2]

Defendant moved to dismiss the indictment, raising

---

[2]The page of the indictment containing this charge is absent from the record. However, the parties do not dispute that defendant was so charged and do not allege any defect in the indict-

several constitutional challenges to the sentence enhancements. The circuit court rejected all of defendant's challenges except for the proportionate penalties challenge. With respect to this challenge, the court granted defendant's motion in part. The court determined that the 15-year and 20-year enhancements to first degree murder (see 730 ILCS 5/5—8—1(a)(1)(d)(i), (a)(1)(d)(ii) (West 2000)) violated the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11), but that the 25-to-life enhancement applicable to the commission of first degree murder when the defendant personally discharged a firearm which resulted in death (see 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2000)) was not unconstitutional.

The State appealed directly to this court. Jurisdiction lies because the circuit court declared a statute unconstitutional. 134 Ill. 2d R. 603.

## ANALYSIS

The issues presented to this court are fewer than those before the circuit court. The State argues that the circuit court erred in determining that the 15- and 20-year sentence enhancements were unconstitutionally disproportionate. Defendant argues that the circuit court was correct in so concluding, and argues additionally that the 25-to-life sentence enhancement suffers from the same defect. Defendant also argues that the 25-to-life enhancement is unconstitutionally vague and is not reasonably designed to remedy the harm that the legislature sought to address.

## I. PROPORTIONATE PENALTIES

The first issue is whether the sentencing amendments pass proportionality review. The constitutionality

---

ment other than the unconstitutionality of the underlying statute. Consequently, the absence of this material presents no impediment to our resolution of the issue.

of a statute is purely a matter of law, and accordingly we review the circuit court's conclusion *de novo. People v. Cornelius*, 213 Ill. 2d 178, 188 (2004). All statutes carry a strong presumption of constitutionality. *People v. Morgan*, 203 Ill. 2d 470, 486 (2003). To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). We generally defer to the legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly. See *People v. Hill*, 199 Ill. 2d 440, 454 (2002). The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority. *Morgan*, 203 Ill. 2d at 488.

A proportionality challenge derives from article I, section 11, of the Illinois Constitution of 1970, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A proportionality challenge contends that the penalty in question was not determined according to the seriousness of the offense, and this court has recognized three distinct ways in which such a challenge may be asserted.

> "First, a penalty violates the proportionate penalties clause if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. [Citations.] Second, a penalty violates the proportionate penalties clause where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more severely. [Citations.] Finally, the proportionate penalties clause is violated where offenses with identical elements are given different sentences." *People v. Moss*, 206 Ill. 2d 503, 522 (2003).

In this case the circuit court determined that the 15- and 20-year sentencing amendments of Public Act 91—404 failed the second type of challenge, commonly referred to as the cross-comparison test. The cross-comparison test is a two-step analysis. First, the court determines whether the statutes being compared have related purposes. *People v. Davis*, 177 Ill. 2d 495, 506 (1997). If not, then the defendant's proportionate penalties challenge must be rejected. If the statutes have common purposes, then the court proceeds to step two of the analysis. In this step, the court determines which offense is more serious, and if the less serious offense is punished more harshly. *Davis*, 177 Ill. 2d at 506-07. If the less serious offense has received a harsher penalty, then the penalty is invalid. The circuit court held that the 15- and 20-year enhancements were invalid under this analysis, but that the 25-to-life enhancement did not violate the proportionate penalties clause.

The circuit court's order is confusing. The court compared the 15- and 20-year enhancements to the armed robbery statute (720 ILCS 5/18—2(a)(2), (a)(3), (a)(4), (b) (West 2000)) with the penalties for aggravated discharge of a firearm (720 ILCS 5/24—1.2 (West 2000)) and aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 2000)). The trial court concluded that the 15- and 20-year enhancements were invalid because they punished merely carrying a weapon or discharging a weapon more harshly than discharging a weapon at another person (aggravated discharge of a firearm) or injuring another person with a firearm (aggravated battery with a firearm). From this, the court concluded all of the 15- and 20-year enhancements of Public Act 91—404 were invalid. Of course, the trial court should not have ruled on the validity of any enhancements other than those to which defendant was potentially subjected: those to the murder statute. See *Morgan*, 203 Ill. 2d at

482 (party has standing to challenge constitutionality of a statute only if he or she is within class aggrieved by the alleged unconstitutionality). Likewise, the court should not have addressed a cross-comparison challenge involving statutes that are not at issue in this case. Defendant was charged with first degree murder. Nevertheless, the trial court utilized the 15- and 20-year enhancements to *armed robbery* as the starting point of its cross-comparison analysis. It is not at all clear why the trial judge chose to assess the constitutionality of statutes not at issue in this case when an analysis utilizing the sentencing enhancements under first degree murder would have yielded the same result.

That said, what the trial court did, albeit inartfully, was to foreshadow this court's decision in *Moss* two years before it was issued. Pursuant to *Moss*, all of the 15- and 20-year enhancements are indeed invalid. Under the approach we adopted in that case, in the second step of a cross-comparison challenge involving a 15/20/25-to-life enhanced offense, we compare only the firearm elements of the offenses. *Moss*, 206 Ill. 2d at 528-30. Doing so yields the result that the 15- and 20-year enhancements are all invalid. This is because merely possessing or discharging a firearm will always be less serious than intentionally causing injury with a firearm or intentionally discharging a firearm in the direction of another. Thus, under the current state of our cross-comparison jurisprudence, murder with a firearm and murder in which a firearm is discharged *are* less serious offenses than aggravated battery with a firearm and aggravated discharge of a firearm. This conclusion, however, is absurd. If we are now using the proportionate penalties clause to strike down legislation based on our conclusion that the legislature erred in failing to see that murder is a less serious offense than aggravated battery with a firearm and aggravated discharge of a firearm, then

something has gone terribly wrong with this court's proportionate penalties jurisprudence. Accordingly, we have determined that it is necessary to review this jurisprudence to determine what has led us to this place and to reassess the proper application of the proportionate penalties clause.

### A. Historical Review of Cross-Comparison Analysis Under the Proportionate Penalties Clause

#### 1. *The 1870 Constitution*

Section 11 of article I of the Illinois Constitution of 1970 is the successor section to section 11 of article II of the Illinois Constitution of 1870. The previous version of the proportionate penalties clause provided as follows:

> "All penalties shall be proportioned to the nature of the offense; and no conviction shall work corruption of blood or forfeiture of estate; nor shall any person be transported out of the State for any offense committed within the same." Ill. Const. 1870, art. II, § 11.

Early on, this court recognized that this provision placed very little restraint on the power of the legislature to ascribe penalties for offenses. Indeed, this court stated that "[t]he nature, character and extent of penalties are matters almost wholly legislative, and the courts have jurisdiction to interfere with legislation upon the subject only where the penalty is manifestly in excess of the very broad and general constitutional limitation invoked." *People v. Landers*, 329 Ill. 453, 457 (1927). Thus, this court determined that it would not strike down a penalty determined by the legislature, even if this court viewed the penalty as absurd or unwise, unless the penalty "shock[ed] the conscience of reasonable men." *Landers*, 329 Ill. at 457. In another case, this court elaborated that it would not invalidate a penalty under the proportionate penalties clause unless it was "a cruel or degrading punishment not known to the common law, or a degrading punishment which had become obsolete in the

State prior to the adoption of its constitution" or was "so wholly disproportioned to the offense as to shock the moral sense of the community." *People v. Callicott*, 322 Ill. 390, 393 (1926). For years, this restrictive test would remain the sole standard under which this court evaluated proportionate penalties challenges. In 1962, this court noted a long line of authority sustaining all legislative judgments in this area, with the exception of one 1873 case (*Chicago & Alton R.R. Co. v. People ex rel. Koerner*, 67 Ill. 11 (1873)) involving the forfeiture of a railroad's franchise as a penalty for price discrimination. See *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962).

### 2. *The 1970 Constitution*

The Illinois Constitution of 1970 retained the proportionate penalties clause, but with different wording. The current version of the clause provides as follows:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. No conviction shall work corruption of blood or forfeiture of estate. No person shall be transported out of the State for an offense committed within the State." Ill. Const. 1970, art. I, § 11.

Although the wording of the first clause was changed from "[a]ll penalties shall be proportioned to the nature of the offense" to "[a]ll penalties shall be determined *** according to the seriousness of the offense," the debates of the Sixth Illinois Constitutional Convention do not evince any intent on the part of the framers to change the meaning of the first clause. See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1380-81, 1391-96, 1413-26.

### 3. *Wisslead*

In 1983, this court gave the proportionate penalties clause a dramatically different reading. See *People v. Wisslead*, 94 Ill. 2d 190 (1983). In *Wisslead*, for the first time, this court used the proportionate penalties clause

to strike down a statutory penalty based on a comparison of that penalty with a penalty for a different offense. The defendant was charged with unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3(a)) and armed violence predicated on unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, pars. 10—3(a), 33A—2). Prior to trial, the trial court held that the penalty for armed violence predicated on unlawful restraint violated the due process and proportionate penalties clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 11). The State appealed directly to this court.

The defendant's argument that the penalty for armed violence predicated on unlawful restraint with a category I weapon (Class X felony) (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1(b), 33A—3(a)) violated the due process and proportionate penalties clauses was based on a comparison of that penalty with the penalties for aggravated kidnapping (Class 1 felony) (Ill. Rev. Stat. 1979, ch. 38, pars. 10—2(a)(5), (b)(2)) and forcible detention (Class 2 felony) (Ill. Rev. Stat. 1979, ch. 38, pars. 10—4(a)(1), (b)). The defendant's argument was similar for both challenges. He argued that armed violence predicated on unlawful restraint was a less serious offense than the similar offenses of aggravated kidnapping and forcible detention, yet these other offenses were punished less harshly. This court simply accepted the defendant's argument without a discussion of the legal standards applicable to such an argument and affirmed the circuit court's decision. *Wisslead*, 94 Ill. 2d at 195-97.

This court's conclusion drew a sharp dissent from three members of the court. See *Wisslead*, 94 Ill. 2d at 197-200 (Simon, J., dissenting, joined by Ryan, C.J., and Underwood, J.). The dissent pointed out that the State can always charge armed violence when an unenhanced felony is committed with a gun. Thus, the defendant's challenge to aggravated kidnapping was meaningless,

because a prosecutor could always charge a defendant who commits a kidnapping with a gun with armed violence instead of aggravated kidnapping and, in that case, the penalty would be equal to that of armed violence predicated on unlawful restraint. Similarly, the dissent pointed out that one who committed armed violence predicated on unlawful restraint would not be encouraged to commit a more serious crime in order to receive a lesser punishment, because he could still be charged with the Class X felony of armed violence based on unlawful restraint. The dissent found that the sentencing structure comported fully with the legislature's intent to provide the maximum disincentive for the carrying of dangerous weapons during felonies. *Wisslead*, 94 Ill. 2d at 197-200 (Simon, J., dissenting, joined by Ryan, C.J., and Underwood, J.).

*Wisslead* was problematic in additional ways not mentioned by the dissent. First, the court never mentioned the standard under which the court had always reviewed proportionate penalties challenges. This court had consistently said that it would interfere with the legislature's judgment only where the penalty was cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *Gonzales*, 25 Ill. 2d at 240. In striking down the penalty for armed violence predicated on unlawful restraint, this court failed to determine if the penalty met this standard.

Second, the court never explained from where it was deriving the notion that a proportionate penalties challenge could be based on the comparison of the penalty for one offense to the penalty for a different offense. The court simply addressed the defendant's due process and proportionate penalties arguments together and said that the policy underlying *both* clauses would be violated if "the penalty prescribed for an offense is not as great or greater than the penalty prescribed for a less serious of-

fense." *Wisslead*, 94 Ill. 2d at 196. The court's citation for this proposition was a *"Cf."* cite to *People v. Bradley*, 79 Ill. 2d 410 (1980), and *People v. Wagner*, 89 Ill. 2d 308 (1982). See *Wisslead*, 94 Ill. 2d at 196. The problem with this citation is that both *Bradley* and *Wagner* are solely due process cases. Neither one addressed the proportionate penalties clause.

In *Bradley*, this court found a violation of the due process clause when *possession* of a schedule IV controlled substance was punished as a Class 3 felony, subjecting the offender to a prison term of 1 to 10 years, while *delivery* of the same substance was punished as a Class 4 felony, with a possible sentence of 1 to 3 years. The court noted that the standard under which a due process challenge to a penalty is evaluated is whether " 'the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " *Bradley*, 79 Ill. 2d at 417, quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 159 (1955). In other words, the test "focuses on the purposes and objectives of the enactment in question." *Bradley*, 79 Ill. 2d at 417. The court found that punishing the lesser-included offense of possession of a schedule IV controlled substance more harshly than the delivery of the same substance violated the due process clause because such an outcome was contrary to the legislature's stated purpose in the Illinois Controlled Substances Act. The legislature codified a statement of intent in which it specifically stated that its intent was to punish those who traffic in controlled substances more harshly than the mere unlawful user. Punishing the delivery of a controlled substance less harshly than the lesser-included offense of possession of the same substance was directly contrary to the legisla-

ture's stated intent, and therefore violated the due process clause. *Bradley*, 79 Ill. 2d at 418.[3]

In *Wagner*, this court relied on *Bradley* to invalidate the penalty for delivery of a noncontrolled substance represented to be a controlled substance because it was harsher than the penalty for delivery of a schedule IV or V controlled substance. The court found that, as in *Bradley*, the less serious crime carried a harsher punishment than a crime that created a greater threat. The court noted that the plain purpose of the Illinois Controlled Substances Act was to deter the traffic in controlled substances, and held that it was not logical to punish one who delivers a noncontrolled substance more severely than one who delivered a controlled substance. Accordingly, the court found that the penalty for delivery of a noncontrolled substance represented to be a controlled substance violated the due process clause of the Illinois Constitution. *Wagner*, 89 Ill. 2d at 313.

*Wagner* was a 4-3 decision, and the dissenters persuasively argued that the majority had misunderstood and misapplied *Bradley*. The dissenters argued that the reason this court knew in *Bradley* that possession was less serious than delivery was that the legislature specifically stated so in a codified statement of legislative intent. By contrast, there was nothing in the Illinois Controlled Substances Act to indicate the legislature's view of the relative seriousness of delivery of a controlled substance and delivery of a look-alike substance. *Wagner*, 89 Ill. 2d at 314-15 (Ryan, C.J., dissenting, joined by Underwood and Goldenhersh, JJ.). Chief Justice Ryan pointed out that, in keeping with the legislature's expressed intent, the legislature had divided up penalties for controlled substances based on possession or delivery, the type of

---

[3]By the time *Bradley* was filed, the legislature had already remedied its oversight and switched the class of the two felonies at issue. See *Bradley*, 79 Ill. 2d at 418.

controlled substance, and the amount of controlled substance. With respect to look-alike substances, however, the legislature merely ascribed one penalty for *any* look-alike substance, no matter what it is represented to be. Chief Justice Ryan noted that, in doing so, the legislature was addressing a different problem than controlled substance offenses. *Wagner*, 89 Ill. 2d at 315 (Ryan, C.J., dissenting, joined by Underwood and Goldenhersh, JJ.). Chief Justice Ryan also foresaw the types of problems inherent in a court trying to second-guess the legislature's judgment as to which of two offenses was more serious:

> "It makes an appealing argument to say, as the majority opinion does, that the defendant here was subject to a greater penalty for the delivery of .4 grams of a 'harmless brown powder' than a person would be who actually delivered any amount of a schedule IV or V controlled substance. However, we do not know the magnitude of the problem or the evils associated with the delivery of a substance represented to be a controlled substance. In the space of one set of briefs filed in this case we cannot hope to be adequately informed as to the nature of the problems the legislature was seeking to resolve. The legislature has the means of informing itself, and it has seen fit to make this classification, which I am unwilling to arbitrarily say was not rational. We must presume the classification to be valid. We just are not in a position to say whether the evil sought to be remedied by section 404 of the Illinois Controlled Substances Act is not as great a threat to the public as is the delivery of certain controlled substances. Contrary to the assumption in the majority opinion, the legislature has not determined that the delivery of controlled substances is a greater threat to the public than is the delivery of a substance represented to be a controlled substance." *Wagner*, 89 Ill. 2d at 316-17 (Ryan, C.J., dissenting, joined by Underwood and Goldenhersh, JJ.).

Chief Justice Ryan went on to discuss the growing problem of look-alike drugs and how it presented a different set of problems than those presented by controlled

substances, and argued that a majority of the court was improperly substituting its judgment for that of the legislature. *Wagner*, 89 Ill. 2d at 316-17 (Ryan, C.J., dissenting, joined by Underwood and Goldenhersh, JJ.). In a separate dissent, Justice Underwood persuasively argued that the defendant did not even have standing to raise the due process argument because he was not charged with delivering a substance represented to be a schedule IV or V substance. Rather, he was charged with delivering a substance represented to be a schedule I controlled substance, and for that offense there was clearly no due process problem. *Wagner*, 89 Ill. 2d at 317-21 (Underwood, J., dissenting, joined by Ryan, C.J., and Goldenhersh, J.).

With the simple insertion of the two letters *"Cf."* in the *Wisslead* cite, and no accompanying analysis, the cross-comparison method of these due process cases became part of this court's proportionate penalties jurisprudence. The Bluebook explains the citation signal *"Cf."* as follows:

"Cited authority supports a proposition different from the main proposition but sufficiently analogous to lend support. Literally, '*cf.*' means 'compare.' The citation's relevance will usually be clear to the reader only if it is explained. Parenthetical explanations ***, however brief, are therefore strongly recommended." The Bluebook: A Uniform System of Citation R. 1.2(a), at 47 (18th ed. 2005).

*Wisslead*'s use of the citation signal *"Cf."* was correct in that *Bradley* and *Wagner* stood for a different proposition than the main one, but incorrect in that they were not sufficiently analogous to lend support. The only parenthetical explanation provided by the *Wisslead* court was the following for *Bradley*: "a more serious penalty should not be provided for a less serious offense." *Wisslead*, 94 Ill. 2d at 196. The court never explained, however, why it was taking what had been solely a due process challenge and turning it into both a due process

*and* a proportionate penalties challenge, all without discussing this court's proportionate penalties jurisprudence and how a comparison between two statutes fit into that jurisprudence. It had never been stated before *Wisslead* that the proportionate penalties clause allowed a defendant to claim that the penalty for the offense for which he was charged was invalid when compared to the penalty for a different offense. Instead, we had stated that we would invalidate a penalty only if it met the "cruel or degrading" standard. Thus, with a questionable citation and no analysis, a century's worth of case law was fundamentally altered and what had been a due process challenge became part of this court's proportionate penalties jurisprudence.

### 4. *Post-Wisslead/Pre-Davis*

For the next 13 years after *Wisslead*, this court rejected almost all of the cross-comparison proportionate penalties arguments brought before the court. See *People v. Steppan*, 105 Ill. 2d 310 (1985); *People v. Bryant*, 128 Ill. 2d 448 (1989); *People v. Wade*, 131 Ill. 2d 370 (1989); *People v. Simmons*, 145 Ill. 2d 264 (1991); *People v. Johns*, 153 Ill. 2d 436 (1992); *People v. Hickman*, 163 Ill. 2d 250 (1994); *People v. Lee*, 167 Ill. 2d 140 (1995); *People v. Bailey*, 167 Ill. 2d 210 (1995); *People v. Miller*, 171 Ill. 2d 330 (1996). In most of these cases, the defendant made his argument under both the due process clause and the proportionate penalties clause. See *Steppan*, 105 Ill. 2d at 318-19; *Bryant*, 128 Ill. 2d at 454; *Wade*, 131 Ill. 2d at 376; *Hickman*, 163 Ill. 2d at 258; *Lee*, 167 Ill. 2d at 144; *Miller*, 171 Ill. 2d at 333-34. Another hallmark of these cases was that the court, although allowing a cross-comparison challenge, was still evaluating the constitutionality of the penalty under the "cruel or degrading" standard. See *Steppan*, 105 Ill. 2d at 320; *Simmons*, 145 Ill. 2d at 270; *Johns*, 153 Ill. 2d at 449; *Hickman*, 163 Ill. 2d at 259-60; *Bailey*, 167 Ill. 2d at 236; *Lee*, 167 Ill. 2d at

145; *Miller*, 171 Ill. 2d at 334. Further, this court seemed to adopt the position taken by the dissenters in *Wagner* that this court is not in a position to second-guess the legislature on which of two offenses is more serious, because we do not know what factors the legislature took into consideration in setting the penalties. See *Steppan*, 105 Ill. 2d at 320 (not proper to equate seriousness of the offense with value of property taken; legislature could have taken other factors into account in determining seriousness of offense); *Simmons*, 145 Ill. 2d at 271 (it is legislature's job to say which of several offenses is most serious); *Johns*, 153 Ill. 2d at 448-49 (error to equate seriousness with value of property taken; legislature may have taken other factors into account, such as a need to halt increase in commission of a particular crime).

A representative case from this period is *Johns*. In that case, the defendants were charged with possession of certificates of vehicle title without complete assignment, in violation of section 4—104(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95$\frac{1}{2}$, par. 4—104(a)(2)). The penalty for this offense was a Class 4 felony. The defendants challenged the penalty under both the due process and proportionate penalties clauses. The court first rejected the due process challenge, finding that the penalty was rationally related to the evil the legislature was trying to prevent. *Johns*, 153 Ill. 2d at 446. Next, the court rejected the defendants' proportionate penalties challenge. The defendants compared the penalty for their offense with other offenses in the Vehicle Code that they contended were more serious. This court stated that it would violate the proportionate penalties clause if conduct that created a less serious threat to the public health and safety was punished more harshly than conduct that created a more serious threat. *Johns*, 153 Ill. 2d at 447. Despite this statement, however, the court still maintained that it would invalidate the

greater penalty only if it was so disproportionate to the offense that it shocked the moral sense of the community or was cruel and degrading. *Johns*, 153 Ill. 2d at 449. Moreover, this court pointed out that the flaw in the defendants' argument was that they were equating seriousness of the offense solely with the value of the property involved. This court pointed out that the deficiency in such an argument was that the legislature may have had other reasons for finding the other offense more serious, including wanting to halt the increase in the commission of that particular crime. *Johns*, 153 Ill. 2d at 449.

Only two penalties were invalidated in cross-comparison cases between 1984 and 1996. In *People v. Morris*, 136 Ill. 2d 157 (1990), the defendant was charged with possessing an altered temporary registration permit (Ill. Rev. Stat. 1987, ch. 95½, par. 4—104(a)(3)). The defendant altered the temporary registration permit (license-applied-for sticker) on his vehicle by changing the expiration date from February 12, 1988, to August 12, 1988. The Illinois Vehicle Code made it a Class 2 felony to possess "any manufacturers statement of origin, salvage certificate, junking certificate, display certificate or certificate of title, temporary registration permit, registration card, license plate or registration sticker knowing it to have been stolen, converted, altered, forged or counterfeited." Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(a)(3), (b)(2). The defendant argued that the Class 2 felony penalty violated the due process and proportionate penalty clauses when applied to someone who alters the temporary registration permit on his own vehicle. This court agreed with the defendant that the penalty violated both clauses when applied to someone in his situation. The court found that the penalty violated the due process clause because it was not reasonably designed to remedy the evils that the legislature had determined

to be a threat. Section 4—104 of the Vehicle Code was in a section entitled "ANTI-THEFT LAWS," and this court had stated that the purpose of such laws was " 'to protect automobile owners against theft and to protect the general public against the commission of crimes involving stolen automobiles' " (*Morris*, 136 Ill. 2d at 162, quoting *People v. One 1979 Pontiac Grand Prix Automobile*, 89 Ill. 2d 506, 510 (1982)). A three- to seven-year prison term for someone who alters the temporary registration permit of his own vehicle in order to extend the expiration date would do nothing to protect the public from automobile theft. *Morris*, 136 Ill. 2d at 162. The court also held that the penalty violated the proportionate penalties clause. The defendant compared the penalty for the offense he committed with that for unauthorized possession of a certificate of title (Class 4 felony) (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(a)(1), (b)(1)), and display of an unauthorized registration sticker (Class A misdemeanor) (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(a)(4), (b)(3)); theft under $300 (the value of the defendant's car) (Class A misdemeanor) (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(e)(1)); and possession of a stolen motor vehicle (Class 2 felony) (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—103(a)(1), (b)). Nevertheless, although the court agreed with the defendant that the penalty violated the proportionate penalties clause, the court did not base its conclusion on the defendant's comparison with these other offenses. Rather, the court applied the "cruel or degrading" standard and concluded that the legislature's steep penalty for the relevant offense was intended to be an antitheft measure and that applying this penalty to one who altered the permit on his own vehicle was disproportionate to the seriousness of the offense. *Morris*, 136 Ill. 2d at 167-68. Thus, although the defendant brought the appeal as a cross-comparison proportionate penalties challenge, this court did not invalidate the penalty on that basis.

The one case in which this court did invalidate a penalty using a cross-comparison analysis during this period was *People v. Hamm*, 149 Ill. 2d 201 (1992). In *Hamm*, the defendants were charged with several felony violations of the Fish Code of 1971. Section 2.4(a) of the Fish Code (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(a)) elevated knowing violations of the Fish Code from misdemeanors to Class 3 felonies if the fishing was commercial and involved over $300 worth of fish. The defendants raised numerous constitutional challenges. This court agreed with two of the defendants' arguments. First, we agreed with the defendants that it violated the due process clause to elevate certain minor Fish Code misdemeanors to Class 3 felonies. This court held that it would violate the due process clause to make violations of section 5.11 (Ill. Rev. Stat. 1989, ch. 56, par. 5.11) and 5.20 (Ill. Rev. Stat. 1989, ch. 56, par. 5.20) of the Fish Code Class 3 felonies. Section 5.11 required that a tag be displayed on certain fishing devices, such as seines, to provide evidence that the device is licensed. Section 5.20 required that any person fishing have in his possession his fishing license for immediate inspection. The court noted that the purpose of section 2.4(a) was to prevent the illegal widespread destruction of natural resources. The court held that having a tag on a fishing net or having a license in one's immediate possession did not assist the State in eliminating the widespread destruction of natural resources. *Hamm*, 149 Ill. 2d at 218. Thus, the court held that making these offenses Class 3 felonies when committed by commercial fishermen taking over $300 worth of fish violated the due process clause because such a penalty was not rationally related to the evil the legislature was addressing. The court rejected such an argument for other violations of the Fish Code, such as fishing in private waters without the owner's permission, using commercial fishing devices in restricted waters,

and using a seine of illegal length and mesh size. *Hamm*, 149 Ill. 2d at 218.

The *Hamm* court held additionally that the Class 3 felony penalty for the same two offenses violated the proportionate penalties clause. First, the court stated that it is reluctant to overturn penalties set by the legislature and that it would do so only when the penalty was cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral sense of the community. *Hamm*, 149 Ill. 2d at 219. Then, the court compared the Fish Code penalties with similar penalties in the Illinois Vehicle Code. The court noted that the Vehicle Code requires that a person operating a motor vehicle must have his driver's license in his possession. However, a person will not be convicted of violating his provision if he produces the license in court and the license was valid at the time of the offense. Ill. Rev. Stat. 1989, ch. 95$^{1/2}$, par. 6—112. Similarly, the court noted that the Vehicle Code provides that a person who fails to display evidence of automobile insurance when requested by a law enforcement officer shall be deemed to be operating an uninsured vehicle. However, the Code also allowed that same person to avoid conviction by producing in court evidence that the vehicle was insured at the time of the arrest. Ill. Rev. Stat. 1989, ch. 95$^{1/2}$, pars. 3—707, 7—602. By contrast, the court noted that similar violations of the Fish Code resulted in a Class 3 felony when committed by a commercial fisherman taking over $300 worth of fish. *Hamm* was the first post-*Wisslead* case to invalidate a penalty using a *Wisslead*-type analysis.

### 5. *Identical Elements*

During this same period, a different type of proportionate penalties analysis emerged. What would later be designated the "identical elements" proportionate penalties analysis was first used in *People v. Christy*, 139 Ill.

2d 172 (1990). In *Christy*, the defendant was convicted of armed violence predicated on kidnapping with a Category I weapon (a knife with a blade of at least three inches in length). This offense was classified as a Class X felony, punishable by 6 to 30 years in prison. Ill. Rev. Stat. 1987, ch. 38, par. 33A—3(a); Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3). The defendant pointed out that the elements of this offense were exactly the same as aggravated kidnapping, but that offense was classified as a Class 1 felony, punishable by 4 to 15 years in prison (Ill. Rev. Stat. 1987, ch. 38, par. 10—2(a)(5); Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(4)). This court held that "common sense and sound logic" would dictate identical penalties for these offenses. Because the identical offenses did not yield identical penalties, this court held that the penalties were unconstitutionally disproportionate and the greater penalty could not stand. *Christy*, 139 Ill. 2d at 181. Justices Miller and Ryan dissented, arguing that different penalties for different offenses simply gave prosecutors the discretion of which offense to charge, and this was not meaningfully different from allowing prosecutors to choose between offenses with different elements. The dissenters pointed out that the Supreme Court held in *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979), that it did not violate the constitutional guarantees of equal protection or due process to allow prosecutors the discretion to choose between two statutes with different elements or even two statutes with identical elements. *Christy*, 139 Ill. 2d at 185-86 (Miller, J., dissenting, joined by Ryan, J.), citing *Batchelder*, 442 U.S. at 125, 60 L. Ed. 2d at 765, 99 S. Ct. at 2205.

This court again used the identical elements analysis in *People v. Lewis*, 175 Ill. 2d 412 (1996). In that case, the defendant was charged with armed violence predicated on robbery with a Category I weapon (720 ILCS

5/18—1, 33A—1 (West 1994)). The defendant argued that the penalty for that offense violated the proportionate penalties clause because it was more severe than the penalty for armed robbery (720 ILCS 5/18—2 (West 1994)), and the two offenses shared identical elements. This court concluded that *Christy* controlled, and thus invalidated the greater penalty. The court rejected the State's invitation to overrule *Christy*. This court also rejected the State's contention that the proportionate penalties clause only allows courts to compare the gravity of a particular offense with the severity of its assigned penalty. Rather, we held that comparing different offenses and their penalties was an accepted part of our proportionate penalties jurisprudence. *Lewis*, 175 Ill. 2d at 420-21. Further, this court stated that comparing offenses with identical elements was less troublesome than comparing offenses with different elements because it did not require a subjective determination by this court as to which offense was more serious. The court merely considers two different penalties given to two identical offenses by the same legislative body. Thus, there is no risk of the court acting as a "superlegislature" or substituting its judgment for that of the legislature. *Lewis*, 175 Ill. 2d at 421-22. Justices Miller and Nickels dissented, arguing that *Christy* was wrongly decided and that the only legitimate type of proportionate penalty review is determining whether the sentence for a particular offense is cruel or degrading or so wholly disproportionate to the offense so as to shock the moral sense of the community. *Lewis*, 175 Ill. 2d at 424-26 (Miller, J., dissenting, joined by Nickels, J.).

### 6. *Davis*

The next significant cross-comparison case was *People v. Davis*, 177 Ill. 2d 495 (1997), which established cross-comparison analysis in its current form. In *Davis*, the defendant was charged with, *inter alia*, failing to have a

firearm owner's card in violation of the Firearm Owners Identification Card Act (430 ILCS 65/2(a)(1) (West 1994)). The defendant moved to dismiss that charge, arguing that the penalty for that offense violated the due process and proportionate penalties clauses of the Illinois Constitution. The defendant argued that it was irrational to make the penalty for this registration offense more serious than that for unlawful use of weapons by a felon (nonprobationable Class 3 felony) (720 ILCS 5/24—1.1(a) (West 1994); 730 ILCS 5/5—8—1(a)(6) (West 1994)). The circuit court agreed with the defendant that the penalty violated the proportionate penalty and due process clauses and dismissed the Firearm Owners Identification Card Act charge. The State appealed, and this court affirmed. This court held that the penalty violated the proportionate penalties clause and thus did not address the due process issue. *Davis*, 177 Ill. 2d at 500.

For the first time, the *Davis* court separated review under the proportionate penalties clause into three different forms. First, a penalty can be compared to its particular offense, and the clause is violated if the penalty is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral sense of the community. Second, a penalty for one offense can be compared to the penalty for a different offense, and the clause is violated if the conduct that creates a less serious threat to the public health and safety is punished more harshly. This analysis would come to be known as the cross-comparison analysis. Third, a penalty can be compared to a different offense that has the same elements. The clause is violated if two identical offenses are given different sentences. *Davis*, 177 Ill. 2d at 503-04. *Davis* did not acknowledge that it was charting a new course here, but clearly it was. As discussed earlier, previous cases that had addressed cross-comparison challenges acknowledged that the clause was violated if less serious conduct was

punished more harshly, but still stated that the court would invalidate the greater penalty only if it violated the "cruel and degrading" standard. *Davis*, for the first time, made these two entirely distinct challenges. Interestingly, in reaffirming this court's use of the cross-comparison proportionate penalties challenge, *Davis* used the same *"Cf."* cite as *Wisslead*. *Davis* stated that the proportionate penalties clause is violated where different offenses are compared and conduct that is a less serious threat is punished more harshly. In support, *Davis* used a *Cf.* cite to *Bradley* and *Wagner*, the same due process cases relied on by *Wisslead*. See *Davis*, 177 Ill. 2d at 504-05.

*Davis* also for the first time broke the cross-comparison analysis into two steps. *Davis* held that the first inquiry in a cross-comparison proportionate penalties analysis is whether the statutes being compared have related statutory purposes. *Davis*, 177 Ill. 2d at 506. Previous cases had used the lack of related purposes as a reason to reject a defendant's contention that one offense was more serious than another, but had never set this forth as an initial threshold that a defendant had to meet. See, *e.g.*, *Hickman*, 163 Ill. 2d at 260; *Johns*, 153 Ill. 2d at 448; *Steppan*, 105 Ill. 2d at 321-22.[4] Left unstated in *Davis* was how to determine statutory purpose. If the court determines that the statutes have related purposes, then the next step is to determine which offense is more serious, and if the less serious one is punished more harshly. *Davis*, 177 Ill. 2d at 506-07. Using this analysis, the *Davis* court found that unlawful

[4]Setting this forth as an initial threshold called into question the court's most recent use of the cross-comparison analysis to invalidate a penalty. In *Hamm*, the court struck down a penalty in the Fish Code by comparing it to penalties in the Vehicle Code. It is difficult to imagine how these provisions had similar statutory purposes.

use of weapons by a felon and failing to have a firearm owners identification card had related statutory purposes, and that unlawful use of weapons by felons was more serious but punished less harshly. Accordingly, the court upheld the trial court's dismissal of the Firearm Owners Identification Act charge. *Davis*, 177 Ill. 2d at 506-08.

*Davis* demonstrates that, as late as 1997, this court was still deeply divided over whether the proportionate penalties clause allowed courts to compare the penalties for statutes with different elements and determine which should be punished more harshly. *Davis* was a 4-3 decision. Justices Miller and Harrison dissented, arguing that "[t]he propriety of the penalty for an offense should be assessed in relation to the conduct underlying that particular charge, and not in relation to the conduct prohibited by other offenses." *Davis*, 177 Ill. 2d at 509 (Miller, J., dissenting, joined by Harrison, J.). Thus, these justices disagreed both with the use of the identical elements analysis and with the cross-comparison analysis. See *Davis*, 177 Ill. 2d at 509 (Miller, J., dissenting, joined by Harrison, J.). They argued additionally that the judiciary's constitutional mandate under the proportionate penalties clause did not include trying to organize the entire body of criminal law into "one grand scheme of comparative proportionality review." *Davis*, 177 Ill. 2d at 510 (Miller, J., dissenting, joined by Harrison, J.). Justice Bilandic also dissented. Justice Bilandic agreed with Justices Miller and Harrison that cross-comparison proportionality review was invalid. However, Justice Bilandic did not believe that the identical elements analysis was also improper. *Davis*, 177 Ill. 2d at 510 (Bilandic, J., dissenting).

### 7. *Post-Davis*

With this new analysis in place, the court rejected proportionate penalties challenges when the offenses the defendant asked the court to compare had different statu-

tory purposes. Thus, this court rejected a comparison between aggravated kidnapping and armed violence predicated on aggravated kidnapping, between aggravated criminal sexual abuse and armed violence predicated on aggravated criminal sexual abuse (*People v. Koppa*, 184 Ill. 2d 159, 172-73 (1998)); between armed violence predicated on possession of a controlled substance and aggravated battery with a firearm, between armed violence predicated on possession of a controlled substance and aggravated criminal sexual assault (*People v. Lombardi*, 184 Ill. 2d 462, 478-79 (1998)); and between falsely reporting a vehicle theft and disorderly conduct (*People v. Fuller*, 187 Ill. 2d 1, 12-15 (1999)). However, this court did conclude that armed violence with a Category I weapon predicated on residential burglary shared a statutory purpose with home invasion. See *Lombardi*, 184 Ill. 2d at 483-84. After so concluding, the *Lombardi* court moved on to step two of the cross-comparison analysis and determined that home invasion was the more serious offense, but that armed violence with a Category I weapon predicated on residential burglary was punished more severely. Accordingly, this court determined that the circuit court was correct in dismissing the armed violence predicated on residential burglary charge. *Lombardi*, 184 Ill. 2d at 485.

These post-*Davis* cases highlight the difficulty that a court faces in defining statutory purpose. For instance, in *Koppa*, this court stated that armed violence predicated on aggravated kidnapping did not have a related statutory purpose with aggravated kidnapping and that armed violence predicated on aggravated criminal sexual assault had a different statutory purpose than aggravated criminal sexual assault. *Koppa*, 184 Ill. 2d at 172-73. *Koppa* made this distinction on the basis that armed violence always involves a weapon, while aggravated criminal sexual abuse and aggravated kidnapping do not

necessarily involve a weapon. Contrast this with the analysis used two months later in *Lombardi*. *Lombardi* found that armed violence predicated on residential burglary with a Category I weapon had a related statutory purpose with home invasion. *Lombardi* used a broader focus than *Koppa* and stated that armed violence predicated on residential burglary targets "the risk that an unauthorized entry into a residence by an armed intruder may result in violence" (*Lombardi*, 184 Ill. 2d at 484), while the purpose of home invasion is "to protect the safety of persons in their homes" (*Lombardi*, 184 Ill. 2d at 484). Had *Lombardi* used the *Koppa* analysis, however, it would have reached the opposite result. Armed violence always involves the use of a weapon, while home invasion does not in all circumstances involve a weapon. The *Lombardi* court could have used this distinction to find that the offenses had different statutory purposes. *Lombardi* and *Koppa* demonstrate the difficulty in defining something like "statutory purpose." Each used a different approach, and each approach is reasonable. The appellate court would later note the difficulty in determining statutory purpose, explaining that, if courts use a broad definition, such as "prevention of crime," then everything qualifies for cross-comparison analysis. On the other hand, a court can define statutory purpose very narrowly, picking out one or two different elements, and then nothing would qualify for cross-comparison analysis. See *People v. Powell*, 355 Ill. App. 3d 124, 133-34 (2004).

### 8. *15/20/25-to-life Sentencing Enhancements*

The next stage in the development of our cross-comparison jurisprudence would come when this court attempted to use the analysis with offenses that had been amended by the 15/20/25-to-life sentencing enhancements. In *People v. Walden*, 199 Ill. 2d 392 (2002), we considered for the first time a challenge to one of these

enhanced offenses. The defendant in *Walden* was charged with armed robbery while in possession of a firearm (720 ILCS 5/18—2(a)(2) (West 2000)). The penalty for that offense is Class X plus a 15-year enhancement. 720 ILCS 5/18—2(b) (West 2000). The defendant argued that this penalty violated the proportionate penalties clause because it was more severe than the Class X penalty for the more serious offense of armed violence predicated on aggravated robbery (720 ILCS 5/18—5(a), 33A—2(a) (West 2000)). To determine the statutory purpose of armed robbery with a firearm, this court looked at the codified statement of legislative intent supplied by the legislature. In this statement, the legislature explained that the purpose of the enhancements is to "deter the use of firearms in the commission of a felony offense." 720 ILCS 5/33A—1(b)(1) (West 2000). This court noted that this purpose was shared by the armed violence statute. *Walden*, 199 Ill. 2d at 396. Accordingly, because this court concluded the offenses shared related statutory purposes, we moved on to step two of the cross-comparison analysis. This court agreed with the defendant that armed violence predicated on aggravated robbery was the more serious offense, and thus we held that the 15-year enhancement for armed robbery while in possession of a firearm was unenforceable. *Walden*, 199 Ill. 2d at 396-97.

One month after *Walden* was filed, this court filed *People v. Hill*, 199 Ill. 2d 440 (2002). In *Hill*, the defendant was charged with home invasion while armed with a firearm (720 ILCS 5/12—11(a)(3) (West 2000)). He filed a motion to dismiss, claiming, *inter alia*, that section 12—11(a)(3) and its accompanying 15-year add-on sentence violated the proportionate penalties clause. On this issue, the trial court agreed with the defendant. The trial court concluded that the 21- to 45-year sentencing range for home invasion under section 12—11(a)(3),

where the defendant need only threaten to use force, was unconstitutionally disproportionate to the 6- to 30-year sentencing range for home invasion under section 12—11(a)(1), where the defendant must use or threaten to use force, and home invasion under section 12—11(a)(2), where the defendant must intentionally cause injury. According to the trial court, "[t]he statute creates greater penalties for offenses which cause less harm." See *Hill*, 199 Ill. 2d at 451. The State appealed directly to this court.

An initial question was whether this court would allow a cross-comparison analysis of different offenses within the same statute. This court held that it would, noting that the State had not presented a single persuasive reason why comparing different offenses within the same statute was different than comparing offenses in different statutes. *Hill*, 199 Ill. 2d at 455. However, instead of determining statutory purpose from the statute as a whole, this court would have to determine the purpose of the separate statutory subparts. In doing so, this court discussed the contours of section 12—11 both before and after it was amended by Public Act 91—404. *Hill*, 199 Ill. 2d at 455-56. This court stated:

> "By comparing section 12—11's current and previous forms, it becomes clear that the legislature, while not labeling it as such, essentially intended to break the offense of home invasion into two distinct categories: offenses committed without a firearm and offenses committed with a firearm. With respect to the former, we conclude that the purpose of subsections (a)(1) and (a)(2) is still to protect the safety of persons in their homes. *** *With respect to the latter, there is no question that subsection (a)(3) is still intended to protect people in their homes.* Subsection (a)(3), however, has a second, more specific purpose. The legislature clearly added subsection (a)(3) in an effort to deter the use of firearms in conjunction with home invasions. Thus, subsection (a)(3) is intended *to protect the safety of people in their homes from intruders carrying firearms* and

to deter such offenders by imposing a particularly severe penalty." (Emphases added and in original.) *Hill*, 199 Ill. 2d at 457.

Significantly, when considering one of the 15/20/25-to-life enhanced offenses, this court derived the purpose of the enhanced offense from the statutory language defining the offense *and* from the legislative purpose applicable to the enhancement. This was different from the *Walden* approach, in which this court looked solely to the codification of legislative purpose applicable to the enhancement. See *Walden*, 199 Ill. 2d at 396. Thus, the purpose of section 12—11(a)(3), as one of the 15/20/25-to-life enhanced offenses, was not merely to deter the use of firearms in the commission of felonies, it was to protect the safety of people in their homes from intruders carrying firearms. *Hill*, 199 Ill. 2d at 457. Because the purpose of section 12—11(a)(3) was different from the purpose of sections 12—11(a)(1) and (a)(2), this court decided that comparing those subsections was inappropriate. *Hill*, 199 Ill. 2d at 458-59. The State would later argue consistently that the *Hill* approach was the correct way to define the statutory purpose of all 15/20/25-to-life enhanced offenses, and that this court should not use this definition solely when doing a cross-comparison analysis within the same statute.

We next considered a cross-comparison challenge to a 15/20/25-to-life enhanced offense in *People v. Morgan*, 203 Ill. 2d 470 (2003). In that case, the defendant was charged with attempted first degree murder. He moved to dismiss that charge, arguing that the 15/20/25-to-life enhancements for that offense violated the proportionate penalties clause. The trial court agreed with the defendant, finding that the enhanced sentences (Class X plus firearm enhancement) for attempted first degree murder shocked the moral sense of the community. *Morgan*, 203 Ill. 2d at 474. The State appealed, and this court affirmed. This court did not agree with the circuit court

that the penalty was invalid under the first type of proportionate penalties challenge—whether the penalty is too serious for its particular offense. This court did find, nevertheless, that the penalty was invalid under the proportionate penalties clause when compared to the penalty for second degree murder (4 to 20 years). Two justices dissented, arguing that the first step of a cross-comparison analysis is determining whether the compared offenses share a related statutory purpose, and that the majority had not undertaken this analysis before concluding that second degree murder was more serious. *Morgan*, 203 Ill. 2d at 493-95 (Thomas, J., dissenting, joined by Kilbride, J.).

Our cross-comparison approach to the 15/20/25-to-life enhanced offenses evolved further in *Moss*. In *Moss*, the defendants in 12 consolidated appeals were charged with various offenses, including attempted first degree murder, armed robbery, aggravated vehicular hijacking, and aggravated kidnapping. They each filed pretrial motions alleging that some of the 15/20/25-to-life provisions of Public Act 91—404 were unconstitutional. The trial courts hearing these motions agreed with the defendants and dismissed the charges against them. The courts compared the 15- and 20-year add-on sentences in Public Act 91—404 with the sentences for other offenses which require the possession or use of firearms, such as aggravated battery with a firearm (see 720 ILCS 5/12—4.2 (West 2000)). The trial courts concluded that the legislative purpose behind the 15/20/25-to-life sentencing provisions was the same as the legislative purpose behind aggravated battery with a firearm: deterring the use of firearms in the commission of felonies. The courts held that the 21- to 45-year sentencing range created by Public Act 91—404 for the charged felony offenses when committed with a firearm was unconstitutionally disproportionate to the 6- to 30-year sentencing range for the

Class X felony of aggravated battery with a firearm. The State appealed directly to this court.

This court reviewed the three proportionate penalties clause analyses, and focused on cross-comparison. *Moss*, 206 Ill. 2d at 522. This court observed that "[t]he issue regarding the first stage of a cross-comparison analysis has already been decided" in *Walden*, where this court looked at the purpose of the Public Act 91—404 amendments, rather than the purpose of the amended underlying offense. *Moss*, 206 Ill. 2d at 525. In making this statement, *Moss* impliedly reaffirmed that this was the approach we would take with the 15/20/25-to-life offenses generally, and that *Hill*'s approach of combining the purpose of the underlying offense with the purpose of the enhancement was for use solely for cross-comparison challenges within the same statute.

Continuing with step one of the cross-comparison analysis, *Moss* held that the 15/20/25-to-life enhanced offenses shared a legislative purpose with aggravated battery with a firearm and aggravated discharge of a firearm. *Moss*, 206 Ill. 2d at 526. Thus, this court proceeded to step two of the cross-comparison analysis, which is determining which of the two offenses is more serious. When this court compared the offenses at issue—aggravated battery with a firearm, aggravated discharge of a firearm, and several felonies that had been enhanced by the 15/20/25-to-life firearm enhancements—it considered *only* the firearm elements of the enhanced offenses rather than the complete offenses. *Moss*, 206 Ill. 2d at 526-30. Thus, *Moss* extended *Walden*'s approach of only looking at the *purpose* of the enhancement in step one to only considering the *elements* of the enhancement in step two. Accordingly, *Moss* concluded that the enhanced offenses at issue were less serious than aggravated battery with a firearm and aggravated discharge of a firearm because they required

merely that a person possess a firearm (15-year enhancement) or discharge a firearm (20-year enhancement), while aggravated battery with a firearm required a person to intentionally inflict injury with a firearm and aggravated discharge of a firearm required a person to discharge a firearm in the direction of another. *Moss*, 206 Ill. 2d at 530. However, when this court compared the *penalties* for the offenses to determine which was punished more harshly, it compared the penalties for the entire offenses; the court did not merely consider the enhancements. *Moss* concluded that the more serious offenses of aggravated discharge of a firearm and aggravated battery were punished less severely than the enhanced offenses, and thus all of the counts charging 15- and 20-year enhanced offenses had to be dismissed. *Moss*, 203 Ill. 2d at 530-32.

The import of *Moss* was clear: if the enhancements in *Moss* were invalid, then *every* other 15- and 20-year enhancement was also invalid. For if the courts are going to compare *only* the firearm elements of the enhanced offenses, then the 15- and 20-year enhancements, no matter what the underlying offense, will always be less serious than intentionally inflicting injury with a firearm or discharging a firearm in the direction of another person. If every one of the 15- and 20-year enhancements is invalid, then the trial court in the present case was correct in concluding that the 15- and 20-year enhancements in the murder statute are invalid. Accordingly, the current state of this court's cross-comparison proportionate penalties jurisprudence requires us to invalidate the 15- and 20-year enhancements in the murder statute, based on our conclusion that murder with a firearm is a less serious offense than aggravated battery with a firearm and aggravated discharge of a firearm. This conclusion is obviously wrong.

### 9. *The End of Cross-Comparison Analysis*

The above review of our case law in this area has

convinced us that judging penalties by a comparison with penalties for offenses with different elements should never have been part of our proportionate penalties jurisprudence. This court has stated that the proportionate penalties clause was clearly intended by the framers to be synonymous with the eighth amendment to the United States Constitution's cruel and unusual punishment clause. See *People v. McDonald*, 168 Ill. 2d 420, 455 (1995). Accordingly, for over 100 years this court gave the clause a restrictive construction, holding that we would invalidate a penalty only if it was cruel, degrading or so wholly disproportionate to the nature of the offense that it shocked the moral sense of the community. We previously acknowledged that the nature of penalties was a matter "almost wholly legislative" (*Landers*, 329 Ill. at 457), and that this court was reluctant to invalidate penalties determined by the legislature (see, *e.g.*, *Bryant*, 128 Ill. 2d at 456; *Steppan*, 105 Ill. 2d at 319). We are reluctant no more. In the last three years we have invalidated nine penalties. See *Walden*, 199 Ill. 2d 392 (armed robbery with a firearm); *Morgan*, 203 Ill. 2d 470 (attempted first degree murder with a firearm; attempted first degree murder in which a firearm is discharged; attempted first degree murder in which a firearm is discharged and causes great bodily harm, permanent disfigurement, permanent disability, or death); *Moss*, 206 Ill. 2d 503 (armed robbery in which a firearm is discharged, aggravated kidnapping with a firearm, aggravated kidnapping in which a firearm is discharged, aggravated vehicular hijacking with a firearm, and aggravated vehicular hijacking in which a firearm is discharged).

The whole cross-comparison branch of our proportionate penalties jurisprudence began with a questionable "*Cf.*" cite rather than a deliberate choice supported by reasoned analysis. See *Wisslead*, 94 Ill. 2d at 196.

Once this court started down that path, it could never find a way to make the analysis work. For several years after *Wisslead*, this court stated that the proportionate penalties clause was violated when conduct that created a less serious threat to the public health, safety, and welfare was punished more harshly than conduct that constituted a greater threat. Nevertheless, the standard this was judged under was the "cruel or degrading" standard. This analysis was problematic for two reasons: one, the test is largely subjective, and two, it is simply not a good test for judging which of two offenses is more serious. In *Davis*, this court tried to fix the analysis to make it less subjective and more workable. This court made it clear that it would compare only statutes that had similar purposes, and that if a less serious offense was punished more harshly than a more serious offense, then the greater penalty would be invalidated. This court would simply compare the two offenses rather than trying to judge them under the "cruel or degrading" standard, which became the test solely for judging a penalty in relation to its specific offense. *Davis*, 177 Ill. 2d at 503-04. All that *Davis* accomplished, however, was to create a whole new set of problems. The analysis became even more subjective, as courts now had to find a way to define "statutory purpose." The cases show that this was not done consistently, and the courts never did settle on a way to define it. The outcome of a cross-comparison case could always be determined by how narrowly or broadly a court chose to define statutory purpose, and there is simply no principled, objective way to define it. When the legislature gave us its own statement of statutory purpose for the 15/20/25-to-life offenses, a whole new set of problems was created and this court began invalidating penalties on a regular basis.

Also, in trying to determine which of two offenses is more serious, this court has long noted the problem that

we do not know what factors the legislature took into account in setting the penalty. All that we can base the assessment on is the degree of harm or the value of property involved, but we have consistently noted that the legislature might have taken other factors into account, such as the need to halt an increase in the occurrence of a particular crime. Nevertheless, when we have invalidated penalties, we have never considered these other factors. Finally, in all the years after the questionable *Wisslead* cite, this court has never defended the use of cross-comparison analysis, except to say that we used it in several cases. See *Lewis*, 175 Ill. 2d at 420-21.

It is clear what needs to be done. After much reflection, we have concluded that cross-comparison analysis has proved to be nothing but problematic and unworkable, and that it needs to be abandoned. Those cases that used such an analysis to invalidate a penalty are overruled, and this court will no longer use the proportionate penalties clause to judge a penalty in relation to the penalty for an offense with different elements.

Overruling a decision of this court, let alone an entire body of case law, necessarily implicates *stare decisis* principles. With regard to *stare decisis*, this court recently observed the following:

"The doctrine of *stare decisis* 'expresses the policy of the courts to stand by precedents and not to disturb settled points.' *Neff v. George*, 364 Ill. 306, 308-09 (1936), overruled on other grounds by *Tuthill v. Rendelman*, 387 Ill. 321 (1944). This doctrine 'is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion.' *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). *Stare decisis* enables both the people and the bar of this state 'to rely upon [this court's] decisions with assurance that they will not be lightly overruled.' *Moehle v. Chrysler Motors Corp.*, 93 Ill. 2d 299, 304 (1982).

To be sure, *stare decisis* is not an inexorable command.

*Chicago Bar Ass'n*, 161 Ill. 2d at 510; *Payne v. Tennessee*, 501 U.S. 808, 842, 115 L. Ed. 2d 720, 746, 111 S. Ct. 2597, 2617 (1991) (Souter, J., concurring). However, we have consistently held that any departure from *stare decisis* must be specially justified (*Chicago Bar Ass'n*, 161 Ill. 2d at 510) and that prior decisions should not be overruled absent 'good cause' (*Moehle*, 93 Ill. 2d at 304; *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 166-67 (1955)) or 'compelling reasons' (*Moehle*, 93 Ill. 2d at 304; *People v. Robinson*, 187 Ill. 2d 461, 463-64 (1999)). This court also has recognized that 'it will not depart from precedent "merely because the court is of the opinion that it might decide otherwise were the question a new one." ' *Robinson*, 187 Ill. 2d at 463-64, quoting *Maki v. Frelk*, 40 Ill. 2d 193, 196-97 (1968). In sum, 'when a rule of law has once been settled, contravening no statute or constitutional principle, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests.' *Maki*, 40 Ill. 2d at 196; see also *Heidenreich v. Bremner*, 260 Ill. 439, 450-51 (1913)." *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81-82 (2004).

We have further noted that good cause to depart from *stare decisis* exists when governing decisions are unworkable or are badly reasoned. See *People v. Jones*, 207 Ill. 2d 122, 134 (2003), citing *Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 737, 111 S. Ct. 2597, 2609 (1991).

For several reasons, we believe departing from *stare decisis* and abandoning cross-comparison proportionate penalties analysis is justified. First, it is clearly an area of the law in which the governing decisions are badly reasoned. As noted above, cross-comparison analysis started with a questionable citation and was never supported by any reasoning other than stating that the court has used it in several cases. Second, the governing decisions have proved unworkable. This court has experimented with different analyses in this area, and all that we have accomplished is to make the analysis more subjective and to put ourselves in a position in which we

are improperly substituting our judgment for that of the legislature. The law in this area has never been settled for any appreciable length of time. Third, this analysis set this court on a collision course with separation of powers principles. Were this court to keep using the cross-comparison analysis as it had been, this court would no longer be constrained to serve as a mere check on the legislature, ensuring compliance with the proportionate penalties clause of the Illinois Constitution. Instead, we would be free to act as a superior legislative branch, substituting our judgment for the legislature whenever we disagreed with the penalties it set. Thus, "serious detriment *** prejudicial to public interests" is likely to arise from this case law. See *Maki v. Frelk*, 40 Ill. 2d 193, 196 (1968). Good cause exists to abandon the cross-comparison analysis.

### 10. *The Future of Proportionate Penalties Clause Jurisprudence*

A defendant may no longer challenge a penalty under the proportionate penalties clause by comparing it with the penalty for an offense with different elements. We retain the other two types of proportionate penalties challenges. A defendant may still argue that the penalty for a particular offense is too severe, and such a challenge will be judged under the familiar "cruel or degrading" standard. Further, a defendant may still challenge a penalty on the basis that it is harsher than the penalty for a different offense that contains identical elements. Some previous justices of this court have criticized the identical-elements analysis on the same basis as the cross-comparison analysis: that the proportionate penalties clause only allows a defendant to challenge a penalty as being too harsh for its particular offense. See *Christy*, 139 Ill. 2d at 181-88 (Miller, J., dissenting, joined by Ryan, J.); *Lewis*, 175 Ill. 2d at 424-26 (Miller, J., dissenting, joined by Nickels, J.). These justices have noted that

the United States Supreme Court has held that providing different penalties for different offenses with identical elements does run afoul of the constitutional guarantees of due process and equal protection. See *Christy*, 139 Ill. 2d at 185 (discussing *Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198). *Batchelder*, however, merely addressed the question under the due process and equal protection clauses of the United States Constitution. That case does not answer whether different penalties for different offenses with identical elements offends the proportionate penalties clause of the Illinois Constitution. This clause requires the legislature to set penalties "according to the seriousness of the offense." If the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense. The legislature has made two different judgments about the seriousness of one offense. Also, as we noted in *Lewis*, the identical-elements analysis is not fraught with the same difficulties as cross-comparison analysis: it requires no subjective determinations by this court, it does not require that we act as a "superlegislature," and it does not threaten separation of powers principles. See *Lewis*, 175 Ill. 2d at 421-22.

Additionally, we do not by this decision prevent defendants from raising challenges to penalties under the due process clause. A defendant can still challenge a penalty on the basis that the penalty is not reasonably designed to remedy the particular evil that the legislature was targeting. See, *e.g.*, *Steppan*, 105 Ill. 2d at 319; *Bradley*, 79 Ill. 2d at 417. That said, we caution that the cross-comparison challenge will not simply resurface as a due process challenge along the lines of *Wagner*. We agree with the dissenters in *Wagner* that the majority in that case misapplied *Bradley* in striking down the penalty for delivery of a noncontrolled substance represented to be a

controlled substance. The majority in *Wagner* made a subjective determination about the seriousness of delivery of a controlled substance versus delivery of a look-alike substance without knowing what factors the legislature took into account in setting the penalties. This was different from the situation in *Bradley*, where the penalty for possession was more severe than the penalty for delivery of the same substance, in direct contradiction to the legislature's stated intent to punish delivery more harshly. Thus, in *Bradley* it was clear that the harsher penalty for possession was not reasonably designed to remedy the particular evil the legislature was targeting. No such problem was apparent in *Wagner*. See *Wagner*, 89 Ill. 2d at 314-17 (Ryan, C.J., dissenting, joined by Underwood and Goldenhersh, JJ.). *Wagner* was merely the erroneous cross-comparison analysis under a different constitutional provision.

B. Defendant's Proportionate Penalties Arguments

1. *The Circuit Court's Analysis*

The State argues that the circuit court reached a faulty conclusion with respect to the 15- and 20-year enhancements to the first degree murder statute. We agree. The trial court struck down the 15- and 20-year enhancements under the proportionate penalties clause by comparing them to an offense with different elements. This is not a proper application of the proportionate penalties clause. The trial court did not compare the enhanced offenses to an offense with identical elements, nor did it find that the enhanced penalties were cruel or degrading or so wholly disproportionate to the nature of the offense that they shocked the moral sense of the community. Accordingly, the trial court erred in its application of the proportionate penalties clause.

2. *Defendant's Additional Proportionate Penalties Arguments*

Defendant makes an additional type of cross-

comparison argument. Defendant compares the enhanced versions of murder to simple murder and argues that it violates the proportionate penalties clause to punish murder in which a firearm is involved more harshly than murder in which a different type of weapon is involved. In making this argument, defendant uses the pre-1997 type of cross-comparison analysis in which two different offenses are compared, but that they are judged under the "cruel or degrading" standard. Defendant argues that it must shock the moral sense of the community that every murder committed with a gun receives a higher minimum penalty than any murder, however foul, committed without a firearm. *Davis*, however, established that cross-comparison challenge and the "cruel or degrading" challenge are separate types of proportionate penalties challenges and that the latter requires only that the penalty be examined in relation to the *offense* for which it is applied. *Davis*, 177 Ill. 2d at 503-04.

Defendant's argument fails under either analysis. First, we have held today that cross-comparison challenges are no longer valid. Second, we have already held in *Morgan* that it is neither cruel nor degrading, nor would it shock the moral sense of the community, to apply the 15/20/25-to-life enhancements to *attempted* first degree murder. *Morgan*, 203 Ill. 2d at 488. Logically, then, it could not possibly be cruel or degrading or a shock to the moral sense of the community to apply the enhancements to first degree murder itself. The sentence enhancements were put into place because of the legislature's recognition of the significant danger posed when a firearm is involved in a felony. As defendant recognizes in another section of his brief, "it is a fact that firearms have the potential to harm or kill more than one person without any or little extra action by the offender. It is this risk of harm or death *to others* that the legislature sought to punish when it enacted the enhancement."

(Emphasis in original.) We conclude that it would not shock the conscience of the community to learn that the legislature has determined that an additional penalty ought to be imposed when murder is committed with a weapon that not only enhances the perpetrator's ability to kill the intended victim, but also increases the risk that grievous harm or death will be inflicted upon bystanders. See *Morgan*, 203 Ill. 2d at 488-89; *Hill*, 199 Ill. 2d at 452-53 (rejecting "shock the conscience" challenge to Public Act 91—404 enhancements to home invasion).

Defendant further argues that the enhancements to the murder statute violate the proportionate penalties clause because they do not serve the purpose of "restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The proportionate penalties clause requires that penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Defendant contends that by setting forth lengthy mandatory minimum sentences for murder involving a firearm, the legislature has failed to consider the objective of restoring the offender to useful citizenship. We disagree.

In *People v. Dunigan*, 165 Ill. 2d 235, 245 (1995), this court stated the following:

> "Our court has previously rejected claims that the legislature violates article I, section 11, when it enacts statutes imposing mandatory minimum sentences. Our decisions have recognized that the legislature's power necessarily includes the authority to establish mandatory minimum sentences, even though such sentences, by definition, restrict the inquiry and function of the judiciary in imposing sentence."

Moreover, this court has held that, in fixing a penalty for an offense, the possibility of rehabilitation is not given greater weight or consideration than the seriousness of the offense. *Taylor*, 102 Ill. 2d at 206. The legislature

codified a statement of intent setting forth how serious it considers the use of firearms during the commission of felonies (720 ILCS 5/33A—1 (West 2002)), and the enhanced sentences are in accord with the legislature's determination in this regard. The legislature did not make the enhancements applicable to all defendants who commit felonies with firearms, but only those who commit some of the most serious felonies (first degree murder; intentional homicide of an unborn child; aggravated kidnapping; aggravated battery of a child; home invasion; aggravated criminal sexual assault; predatory criminal sexual assault of a child; armed robbery; aggravated vehicular hijacking; and armed violence). Defendant has failed to convince us that the legislature did not take into account rehabilitative potential when making these enhancements applicable to first degree murder.

Defendant makes one final proportionate penalties argument. He contends that the 25-to-life enhancement must be invalidated under the identical-elements test. Here defendant contends that the crime of first degree murder is comprised of identical elements regardless of whether that crime is committed through the use of a firearm or otherwise, and it is therefore illegitimate to impose a higher sentence when a firearm is used. This argument assumes what it attempts to prove, however, with respect to the identity of the elements of the crimes. Even a casual consideration of the issue reveals that for the 25-to-life enhancement to apply, there are indeed additional facts which must be proven: that the perpetrator personally discharged a firearm during the commission of the offense and that he "caused great bodily harm, permanent disability, permanent disfigurement, or death to another person" thereby. 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2002). This is not a case in which different sentences are imposed for crimes with identical

elements. Accordingly, we reject defendant's proportionality challenge to the 25-to-life enhancement.

## II. DUE PROCESS

In the alternative, defendant challenges the 25-to-life enhancement under the due process clause. Ill. Const. 1970, art. I, § 2. Defendant argues that the 25-to-life enhancement is unconstitutionally vague and that it is not reasonably designed to remedy the harm the legislature sought to address. We reject these challenges as well.

The contours of a vagueness challenge are well established:

"A vagueness challenge is a due process challenge, examining whether a statute ' "give[s] [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." ' *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998), quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972). An act is not, however, unconstitutionally vague simply because one can conjure up a hypothetical dispute over the meaning of some of the act's terms. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 481 (1998).

When considering a vagueness challenge to a statute, a court considers not only the language used, but also the legislative objective and the evil the statute is designed to remedy. [*In re*] *R.C.*, 195 Ill. 2d [291,] 299 [(2001)]. In cases such as the one at bar that do not involve first amendment freedoms, due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions. *People v. Falbe*, 189 Ill. 2d 635, 640 (2000)."

*People v. Greco*, 204 Ill. 2d 400, 415-16 (2003).

The 25-to-life enhancement to the crime of first degree murder states as follows:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first-degree murder,

(a) a term shall be not less than 20 years and not more than 60 years, or

* * *

(d) ***

***

(iii) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5—8—1(a)(1)(a), (a)(1)(d)(iii) (West 2000).

Defendant argues that the 25-to-life enhancement (subsection (a)(1)(d)(iii)) is vague in two ways. First, defendant argues that the phrase "during the commission of the offense" is vague, in that it could be understood to mean that the enhancement ought only to apply when the harmful firearm discharge occurred during the commission of some offense other than first degree murder. We do not find this to be a reasonable interpretation of the statute. Subsection (a)(1)(d)(iii) clearly is intended to specify the circumstances in which an additional sentence will be imposed for the offense of first degree murder. The extended penalty applies if a defendant personally discharges a firearm which causes the specified level of harm to another person during the commission of the crime of first degree murder. There is no question that first degree murder is "the offense" to which that subsection refers, and we find no ambiguity here.

Defendant's second vagueness challenge meets a similar end. Defendant argues that the term "another person" is also ambiguous, in that persons of reasonable

intelligence could understand this to mean a person other than the murder victim. We again believe that this interpretation is strained. It is quite clear that the legislature intended the enhanced penalty to apply whenever the perpetrator by means of personal discharge of a firearm causes the requisite level of injury to someone other than *himself.*

Defendant argues that this interpretation of the statute ought to be avoided, however, because it leads to a double-enhancement problem. Defendant argues that the level of harm necessary to trigger the 25-to-life penalty is already implicit in the crime of first degree murder, and thus it constitutes double enhancement to increase the penalty level based on that same degree of harm. Defendant concedes that the enhancement also requires proof that the harm have been committed with a firearm but argues that, even so, there is in the context of first degree murder a double-enhancement problem when one compares the 25-to-life enhancement with the 20-year enhancement. In other words, defendant argues that the only difference between the 20-year enhancement and the 25-to-life enhancement is the degree of harm requirement in the latter, but that degree of harm is inherent in the crime of first degree murder. Thus, any defendant subject to the 20-year enhancement would automatically be subject to the 25-to-life enhancement because of the harm inherent in the underlying crime of first degree murder. And thus, there is a double enhancement.

We find no double-enhancement problem. We do agree with defendant that the degree of harm required to invoke the 25-to-life enhancement is inherent in the crime of murder, but we note that the enhancement requires that the harm be caused *by the firearm*. See *People v. Bloomingburg*, 346 Ill. App. 3d 308, 325-26 (2004); *People v. Sawczenko-Dub*, 345 Ill. App. 3d 522,

537-39 (2003). Thus even in the context of the crime of first degree murder, the 20-year enhancement is not automatically upgraded to 25-to-life. It is entirely possible to conceive of a situation in which a defendant attempts to kill a victim with a firearm but misses, then proceeds to complete the crime without using the firearm to do so. Such a defendant would be subject to the 20-year enhancement for discharging a firearm but would not be subject to the 25-to-life enhancement because he did not cause the murder thereby.

There is a more fundamental difficulty with defendant's invocation of the 20-year sentence enhancement in his double-enhancement argument, however. That is, the general rule against double enhancement is merely a rule of construction established by this court, which arises from the presumption that the legislature considered the factors inherent in the offense in setting the initial penalty for that offense. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). But where the legislature has made clear an intention to enhance the penalty for a crime, even in a way which might constitute double-enhancement, this court will not overrule the legislature. *Rissley*, 165 Ill. 2d at 390-91. Here, the legislature's intentions regarding the circumstances in which the sentence enhancements are to be applied are quite clear. We find no reason to construe the statute in a manner so as to defeat the clearly expressed legislative intent.

Finally, defendant argues that the 25-to-life enhancement violates due process because it punishes the threat of harm more severely than the harm itself. Defendant notes that the 25-to-life enhancement is a harsher penalty than the baseline penalty for first degree murder—20 to 60 years. He contends that this state of affairs violates due process because the firearm-use enhancement is intended to forestall the *possibility* of harm to others, whereas first degree murder punishes

the *actual intentional killing* of another. He cites *Bradley*, *Moss* and *Morgan*.

Defendant has read into the authority upon which he relies a rule this court has never adopted. The reason we invalidated the sentencing provision at issue in *Bradley* was that the legislature had set a higher punishment for possession of a controlled substance than for delivery of that same substance, even though possession is a lesser-included offense of delivery and even though the legislature had expressly found that delivery was a more serious offense that should be punished more harshly. *Bradley*, 79 Ill. 2d at 417-18. *Moss* and *Morgan* are not even due process cases.

Nor are we inclined now to conclude that due process places such tight constraints on the legislature's power to set criminal penalties that the legislature is forbidden from taking potential harm into account in enhancing the punishment for conduct which additionally causes actual harm. The legislature has determined that firearm use is a serious problem because of the real danger that such weapons can cause accidental lethal injury. In order to combat this problem the legislature has decided to impose a sentencing enhancement of 25 years to life when a perpetrator discharges a firearm during the commission of a serious felony and causes serious harm to another person by doing so. To pass muster under the due process clause, a penalty must be reasonably designed to remedy the particular evil that the legislature was targeting. See *Steppan*, 105 Ill. 2d at 319; *Bradley*, 79 Ill. 2d at 417. The legislature clearly spelled out its intent in enacting the firearm enhancements in a codified statement of legislative intent. See 720 ILCS 5/33A—1(a), (b) (West 2000).[5] In this statement, the legislature notes the serious threat to the public health, safety, and welfare

[5]Although codified as part of the armed violence statute, these legislative findings were enacted as part of Public Act 91—404,

caused by the use of firearms in felony offenses. The legislature states that its intent is to impose particularly severe penalties in order to deter the use of firearms in the commission of felonies, and that it believes that the use of firearms in the commission of felonies needs to be punished even more severely than offenses such as aggravated battery with a firearm and aggravated discharge of a firearm. Unquestionably, the 15/20/25-to-life enhancements are reasonably designed to remedy the particular evil the legislature was targeting. We find no due process violation in the legislature's determination that the social ill being addressed merits the penalty imposed.

Moreover, even assuming *arguendo* that due process prohibits the legislature from punishing the possibility of harm more severely than the actual identical harm, we would not find that the legislature had violated that rule in this case. A single count of murder represents the death of a single individual. Usage of a firearm during a felony puts at risk the lives of any bystanders within the firearm's effective deadly range, which can be hundreds of feet or more. Again, as defendant admits in his brief, "it is a fact that firearms have the potential to harm or kill *more than one person without any or little extra action by the offender.*" (Emphasis added.) Certainly the risk to other persons is not more serious than death, but defendant has not shown that the actual death of a single person is by definition more serious than conduct which causes serious harm or death and has the capacity to put at risk the lives of dozens of persons or more at once "without any or little extra action." The legislature did

which enhanced the penalty for numerous offenses committed while in possession of a firearm. Moreover, by its very terms the statement applies to enhancements added to "armed violence and other serious felony offenses." 720 ILCS 5/33A—1(b)(2) (West 2002).

not clearly err in determining that engaging in conduct which represents a risk of death to numerous people, and which did in fact cause serious harm to one victim, merits the extremely serious sentencing enhancement of 25 years' to life imprisonment.

## CONCLUSION

We hold today that a defendant may not challenge a penalty under the proportionate penalties clause by comparing it to the penalty for an offense with different elements. Accordingly, the trial court erred in holding that the 15- and 20-year firearm enhancements to first degree murder are unconstitutional under the proportionate penalties clause. Defendant's other proportionate penalties and due process arguments fail for the reasons set forth above. Accordingly, we reverse the circuit court's judgment and remand the cause for further proceedings.

*Reversed and remanded.*