2023 IL App (4th) 220385
NO. 4-22-0385

FILED
March 3, 2023
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| CORY P. MELVIN, | ) | No. 20CF116 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Doherty and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2020, the State charged defendant, Cory P. Melvin, by information, with five counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)). At the conclusion of a bench trial, the Livingston County circuit court found defendant guilty of all five charges. Defendant filed a posttrial motion, asserting the evidence was insufficient to prove him guilty on all five counts. At a joint December 2021 hearing, the court denied defendant's posttrial motion and sentenced defendant to five consecutive prison terms of 27 years. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 2        Defendant appeals, contending (1) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of count III of predatory criminal sexual assault of a child and (2) his sentence for count V of predatory criminal sexual assault of a child violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We affirm.

¶ 3                               I. BACKGROUND

¶ 4        The two charges of predatory criminal sexual assault of a child at issue in this appeal are counts III and V. Count III alleged that—during the period of around May 5, 2017, to May 5, 2020—defendant, who was 17 years of age or older, committed an act of sexual penetration with K.A., who was under 13 years of age when the act was committed, by knowingly placing his finger inside K.A.'s vagina. Count V asserted that—during the period of around May 5, 2017, to May 5, 2020—defendant, who was 17 years of age or older, committed "an act of contact" with K.A., who was under 13 years of age when the act was committed, by knowingly placing K.A.'s hand on his penis for the purpose of his sexual gratification or arousal.

¶ 5        On October 28, 2021, the trial court commenced a bench trial on the five charges. The State presented the testimony of (1) Steven Hinz, the person who called the police when K.A. showed up at his front door; (2) K.A., the victim; (3) Emily Frobish, a Livingston County Sheriff's detective; and (4) Dr. Channing Petrak, a child abuse pediatrician. The State also presented the recordings of Amber Stensrud's June 9, 2020, interview of K.A. at the Children's Advocacy Center (CAC) and Detective Frobish's interview of defendant, which also took place on June 9, 2020. Defendant testified on his own behalf and presented the testimony of his aunt, Juanita Barger, and his girlfriend, who is the victim's mother. The evidence relevant to the issues on appeal follows.

¶ 6        Hinz testified he heard a knock on the door sometime between 4 and 5 a.m. on June 9, 2021. A little girl, whom he had never seen before, was at his door. She did not have any shoes on and wanted him to take her to her grandmother's home. Hinz guessed she was around 10 years old. Hinz called the police, and when he informed K.A. he had done so, she said she did not want the police called because she did not want to get anyone in trouble. K.A. had explained to him she had walked to the gas station, but it was still closed. She then went to the house across the street

from Hinz's home, but no one answered the door. K.A. then went to Hinz's home. Hinz described K.A.'s demeanor as desperate.

¶ 7        K.A. testified she used to live in an apartment with defendant, her mother, and two brothers. While she lived in that household, defendant would touch her vagina with his mouth and hands. He also touched her bottom with his penis. K.A. further testified she touched defendant's private parts with her hands and mouth. Such things took place in every room of the apartment, except for the bathroom, and happened a lot. K.A. further explained the incidents would happen while her brothers were somewhere else and her mother was busy. K.A. got "sick of it" and ran away.

¶ 8        After K.A.'s testimony, the State presented its exhibit No. 1, which was the recording of Stensrud's interview of K.A. at the CAC. The parties stipulated to the foundation for the CAC recording, and defendant did not object to its admission. On the video, K.A. stated she was 10 years old. She eventually indicated she wanted to talk about what happened that morning. K.A. explained how she snuck out of the family's apartment because she had to do something to stop her "dad" from touching her private parts. K.A. named defendant as her "dad." She noted defendant touched her private parts and she had to pretend to like it. Those incidents had been happening since she was seven or eight years old.

¶ 9        When asked to clarify what private parts defendant touched, K.A. responded "all of it" and pointed to her breasts, vagina, and butt. K.A. stated defendant touched her private parts with his finger, private part, and mouth. In identifying her vagina, K.A. would point to it and/or say "down there." K.A. explained defendant touched "down there" with his finger. When asked what defendant would do with his finger down there, K.A. replied, "wiggles it." She further explained defendant would slide her pants and underwear off before touching her. When asked

- 3 -

where defendant's finger would go when he wiggles it, K.A. responded "down there." K.A. stated it made her body feel "horrible." When asked if he touched her down there "on the skin or over the clothes or something else," K.A. replied, "on the skin." K.A. also stated defendant put his private part "in her butthole." Additionally, K.A. described other types of sexual contact, including defendant placing his penis on K.A.'s hand. K.A. demonstrated what defendant made her do with her hand on his penis. Most of the time these things happened in her bedroom, and K.A. was lying on her bed. They happened two to three times a week, when K.A.'s mother was occupied.

¶ 10     K.A. was asked about the last time defendant touched her. She said it happened one or two weeks before in her bedroom. Defendant touched her private part down there with his finger. That time he just slipped his hand into her pants. K.A. said defendant "wiggled" his finger.

¶ 11     Detective Frobish testified she was the lead investigator in the investigation of defendant. She went to defendant and K.A.'s apartment to observe the layout and collect evidence. After she went through the apartment, Detective Frobish interviewed defendant. During the interview, defendant stated he never touched his daughter with his tongue and fingers. That struck Detective Frobish as odd because she had never brought up to him the specific accusations that were made. Detective Frobish had told defendant that K.A. had accused him of inappropriately touching her. Her interview of defendant was recorded and admitted into evidence as State's exhibit No. 3.

¶ 12     During the interview, defendant continuously denied he inappropriately touched K.A. He referred to K.A. as his daughter and her mother as his wife, even though he was not married to K.A.'s mother and was not K.A.'s biological father. Defendant had been dating K.A.'s mother for four years, and they had two biological children together. Defendant referred to the allegations of sexual abuse as "crap" and described the situation as "aggravating." He could not

- 4 -

understand why K.A. would make up the allegations because he would never touch her. At the beginning of the interview, Detective Frobish did not inform defendant of the details of K.A.'s accusations. She eventually asked him if he stuck his penis in K.A.'s anus, and he denied doing so. Detective Frobish further asked if he had touched K.A.'s breast, and he again denied it. She also asked why K.A. would say defendant put his fingers on her private parts, and defendant said he did not know why. Detective Frobish indicated she did not believe defendant and noted 10 year olds do not make this stuff up. Defendant eventually stated, "I never once put my f*** penis in her. I never once put my penis, fingers, tongue, nothing." Detective Frobish then questioned why he would mention fingers and tongue. Defendant said he was just "covering all the bases." Detective Frobish continued to question why he would mention the tongue. At some point, defendant stated, "I eat my woman's p***," "I put my fingers up in her p***," and "she sucks on my d***." He then stated, "If she is talking about me putting my d*** in her ass, then the rest of that s*** is going to eventually pop up." Thereafter, defendant again denied touching K.A. He also said K.A. had never seen him and her mother engaged in such acts because they happened behind closed doors. Defendant denied having any type of pornography in the home or on his cellphone.

¶ 13 Dr. Petrak testified she was a child abuse pediatrician, which meant she did medical evaluations for children when a concern of abuse or neglect was raised. Dr. Petrak examined K.A. on June 16, 2020. K.A.'s examination was normal, which was what Dr. Petrak expected. She explained minor trauma to the anogenital area heals very quickly.

¶ 14 The parties stipulated to the chain of custody of the mattress cover taken from K.A.'s bed and the results of the forensic test completed on it. Deoxyribonucleic acid (DNA) found in four separate samples of semen found on the mattress cover matched defendant's DNA.

¶ 15 Defendant testified on his own behalf and denied ever touching K.A. in a sexual

way. He explained K.A.'s mattress was the same one he and K.A.'s mother slept on at a former residence. Both defendant and K.A.'s mother testified K.A. had been talking back and having other disciplinary issues in the months before she ran away. K.A. had asked to live with her grandparents. Moreover, Barger and K.A.'s mother testified K.A. was always with her mother when she was home. K.A.'s mother did not think defendant was ever alone enough with K.A. for the allegations to be true.

¶ 16　　　　After the parties' closing arguments, the trial court found defendant guilty of all five charges. Defendant filed a posttrial motion, asserting the State's evidence was insufficient to prove him guilty on all five charges. In December 2021, the trial court held a joint hearing on defendant's posttrial motion and sentencing. The court denied the posttrial motion and sentenced defendant to five consecutive terms of 27 years in prison. Defendant filed a motion to reconsider his sentence, which the court denied after an April 28, 2022, hearing.

¶ 17　　　　On May 9, 2022, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 18　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　　　　　　　A. Sufficiency of the Evidence

¶ 20　　　　On appeal, defendant contends the State's evidence was insufficient to prove beyond a reasonable doubt he committed count III of predatory criminal sexual assault of a child. Our supreme court has set forth the following standard of review for insufficiency of the evidence claims:

　　　　　　　　"It is well settled that, when reviewing a challenge to the sufficiency of the

　　　　　　　　evidence, a reviewing court must determine whether, after viewing the evidence in

- 6 -

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] All reasonable inferences from the evidence must be drawn in favor of the prosecution. [Citation.] This court will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Cline*, 2022 IL 126383, ¶ 25, 193 N.E.3d 1220.

¶ 21    When the information for predatory criminal sexual assault of a child charges the defendant with committing an act of sexual penetration with the victim, the State must prove (1) the victim was 13 years of age or younger, (2) the defendant was 17 years of age or older, and (3) the defendant committed an act of sexual penetration. 720 ILCS 5/11-1.40(a)(1) (West 2020). Defendant contends the State failed to prove sexual penetration as alleged in count III. "Sexual penetration" is defined, in pertinent part, as follows:

> "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration." 720 ILCS 5/11-0.1 (West 2020).

In this case, count III alleged defendant placed his finger inside K.A.'s vagina. Thus, the State had to prove defendant made a slight intrusion with his finger into K.A.'s vagina.

¶ 22    In support of his argument the State's evidence was insufficient to prove the aforementioned assertion, defendant cites *People v. Maggette*, 195 Ill. 2d 336, 352, 747 N.E.2d 339, 349 (2001), in which our supreme court held, "[t]he victim's brief and vague reference to her

vaginal area [was] insufficient to prove an 'intrusion.' " There, the victim had testified her underwear was still up on her body and the defendant was " "rubbing and caressing me through— he got underneath my panties—and I felt underneath my panties and in my vagina area and through it just right through it and his fingers going underneath it.' " (Emphasis omitted.) *Maggette*, 195 Ill. 2d at 352.

¶ 23    Unlike in *Maggette*, the evidence regarding defendant's touching of K.A. was not brief. At trial, K.A. testified defendant touched her vagina with his mouth and hands. The State also presented the recording of the interview of K.A. by Stensrud. During the interview, K.A. stated defendant touched all of her private parts with his finger. When asked what private parts, K.A. gestured to several areas, including her vaginal area. Stensrud asked K.A. what defendant does with his finger and gestured to the vaginal area, and K.A. replied, "wiggles it." Stensrud also asked clarifying questions, and K.A. explained she had no pants or underwear on when defendant touched her. Stensrud then asked K.A., when defendant wiggles around his finger when he touches down there "is it on the skin or over the clothes or something else?" K.A. replied, "on the skin." Stensrud further asked where does defendant's "finger go when he wiggles it?" K.A. replied, "down there." When asked how that would make her body feel, K.A. explained she felt "horrible" but pretended to like it so defendant did not get upset. If K.A. did not pretend to like it, then defendant would ask her why she did not like it.

¶ 24    The State also presented Detective Frobish's interview of defendant. During the interview, defendant denied inappropriately touching K.A. and stated he treated K.A. as his own daughter. However, late in the interview process, he volunteered he never once put his penis, fingers, or tongue in K.A. Until that point, Detective Frobish had never mentioned any accusations related to defendant touching K.A. with his tongue. Detective Frobish then questioned defendant

about why he would bring up the tongue, since she never mentioned that. Defendant stated he was just covering all of the bases and was sure all of it would get thrown at him. Detective Frobish continued to question defendant about why he would mention the tongue. Defendant explained, "I eat my woman's p***," "I put my fingers up in her p***," and "she sucks on my d***." He then stated, "If she is talking about me putting my d*** in her a***, then the rest of that s*** is going to eventually pop up." Thus, the State presented evidence defendant's sexual activity with K.A.'s mother involved him penetrating K.A.'s mother's vagina with his fingers. Notably, defendant denied K.A. witnessed him doing those things with her mother.

¶ 25        Given defendant's aforementioned statements and K.A.'s statements during the CAC interview defendant was wanting to provide sexual gratification to K.A. with the wiggling of his finger, it is a reasonable inference defendant inserted his finger into K.A.'s vagina. Moreover, K.A.'s "horrible" response to Stensrud's question of how did it make K.A.'s body feel when defendant wiggled his finger is consistent with that inference. Additionally, K.A.'s word choice is significant. She used the word "wiggle" to describe defendant's finger movements, which is more suggestive of an intrusion than "rub" and "caress" used by the victim in *Maggette*. Accordingly, we find the State's evidence was sufficient for the trier of fact to find beyond a reasonable doubt defendant did insert his finger into K.A.'s vagina.

¶ 26                        B. Proportionate Penalties

¶ 27        Defendant also contends his conviction and sentence for predatory criminal sexual assault of a child in count V violates the proportionate penalties clause because it shares the same elements of aggravated criminal sexual abuse, a Class 2 felony (720 ILCS 5/11-1.60(c)(1)(i), (g) (West 2020)), but is punished more severely. In making the argument, defendant focuses on his actions that serve as the basis of his conviction on count V. In response, the State contends

defendant acknowledges he cannot make a facial constitutional challenge and, instead, is raising an as-applied constitutional challenge. The State then asserts an as-applied challenge cannot be raised under the identical elements test. Defendant responds he did not make a concession a facial constitutional challenge would be unsuccessful but again cites the facts underlying count V. He also fails to expressly state whether he is raising an as-applied or facial challenge to his sentence. We begin by clarifying the law in this area.

¶ 28            Regarding the constitutionality of a criminal statute, our supreme court has emphasized the following:

"Constitutional challenges carry the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional. [Citation.] That presumption applies with equal force to legislative enactments that declare and define conduct constituting a crime and determine the penalties imposed for such conduct. [Citation.] To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution. [Citation.] Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity. [Citation.] The constitutionality of a statute is a matter of law, and accordingly we review the circuit court's conclusion *de novo*. [Citation.]

This court has recently reiterated that facial and as-applied challenges are not interchangeable, and there are fundamental distinctions between them. [Citation.] An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. [Citation.] In contrast, a facial challenge requires a showing that the statute is

- 10 -

unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant. [Citation.] The burden on the challenger is particularly heavy when a facial constitutional challenge is presented. [Citation.] The fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. [Citation.] So long as there exists a situation in which the statute could be validly applied, a facial challenge must fail. [Citations.]" (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶¶ 23-24, 61 N.E.3d 92.

Additionally, as to challenges under the proportionate penalties clause, our supreme court has recognized two types of challenges. See *People v. Sharpe*, 216 Ill. 2d 481, 521, 839 N.E.2d 492, 517 (2005). A defendant may argue the penalty for a particular offense is too severe, which is judged under the " 'cruel or degrading' standard." *Sharpe*, 216 Ill. 2d at 521, 839 N.E.2d at 517. A defendant may also challenge a penalty on the basis it is harsher than the penalty for a different offense that contains identical elements. *Sharpe*, 216 Ill. 2d at 521, 839 N.E.2d at 517.

¶ 29         Defendant's argument clearly raises a constitutional challenge under the identical elements test. The identical elements test is completely objective. *People v. Clemons*, 2012 IL 107821, ¶ 46, 968 N.E.2d 1046. The court "does not make any subjective determinations regarding the gravity of an individual offense or the severity of the penalty imposed for that offense." (Internal quotation marks omitted.) *Clemons*, 2012 IL 107821, ¶ 46. It "compares identical offenses, as defined by the same legislative body, with their respective penalties, again, as given by the same legislative body." *Clemons*, 2012 IL 107821, ¶ 46. "This objective test does not consider the offenses as applied to an individual defendant." *People v. Williams*, 2015 IL 117470, ¶ 19, 43 N.E.3d 941. As such, a defendant cannot raise an as-applied challenge to a penalty under

- 11 -

the identical elements test, and the facts of this case underlying the conviction for count V are irrelevant to an identical elements analysis. See *Williams*, 2015 IL 117470, ¶ 19 (declining to consider the defendant's argument the statute was only unconstitutional as applied to him under the identical elements test).

¶ 30 Recently, the Appellate Court, Second District, addressed a defendant's argument the statutes for predatory criminal sexual assault of a child and aggravated criminal sexual abuse violate the proportionate penalties clause as applied to him. *People v. Johanson*, 2023 IL App (2d) 210690, ¶ 24. While it ultimately rejected the defendant's argument, the *Johanson* court did find support for the defendant's argument in our decision in *People v. Deckard*, 2020 IL App (4th) 170781-U. *Johanson*, 2023 IL App (2d) 210690, ¶ 24. There, the defendant had argued three of his convictions for predatory criminal sexual assault of a child violated the proportionate penalties clause because those offenses, as charged, had the same elements as aggravated criminal sexual abuse. *Deckard*, 2020 IL App (4th) 170781-U, ¶ 72. This court agreed with the defendant's argument and vacated those three predatory criminal sexual assault convictions and imposed three convictions for the Class 2 felonies of aggravated criminal sexual abuse. *Deckard*, 2020 IL App (4th) 170781-U, ¶ 72. However, as in this case, the defendant in *Deckard* had failed to identify what type of proportionate penalties clause challenge he was raising, and *Williams* was not cited by either party. *Deckard*, 2020 IL App (4th) 170781-U, ¶¶ 72-75. Regardless, as an order under Illinois Supreme Court Rule 23 (eff. Apr. 1, 2018), our decision in *Deckard* is not precedential authority. To the extent the *Deckard* decision's mere existence suggests a defendant can raise an as-applied proportionate penalties challenge under the identical elements test, we emphasize the supreme court's decision in *Williams* does not allow such a challenge.

¶ 31 Moreover, we agree with the State that defendant is not raising a facial challenge

to the sentencing scheme for predatory criminal sexual assault of a child. Defendant makes no argument the statute is unconstitutional under any set of facts. Defendant's argument solely addresses the facts of his case. Accordingly, we do not address whether the sentencing scheme for predatory criminal sexual assault of a child is facially unconstitutional under the identical elements test.

¶ 32                                III. CONCLUSION

¶ 33          For the reasons stated, we affirm the Livingston County circuit court's judgment.

¶ 34          Affirmed.

*People v. Melvin*, 2023 IL App (4th) 220385

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 20-CF-116; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Melinda Grace Palacio, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Randy Yedinak, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Timothy J. Londrigan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |