NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230284-U

NO. 4-23-0284

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 31, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| SEAN S., | ) | No. 20CF223 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's 45-year sentence for predatory criminal sexual assault of a child was
        not excessive and did not violate the proportionate penalties clause.

¶ 2    In 2020, the State charged defendant, Sean S., by information with seven counts
of predatory criminal sexual assault of a child, two counts of aggravated criminal sexual abuse,
one count of indecent solicitation of a child, one count of sexual exploitation of a child, and one
count of battery. The charges involved two minor victims. After a bench trial, the Livingston
County circuit court entered a written order finding defendant guilty of one count of indecent
solicitation of a child, one count of sexual exploitation of a child, one count of predatory criminal
sexual assault of a child, and one count of aggravated criminal sexual abuse. Defendant filed a
posttrial motion challenging the guilty findings. At a joint November 2022 hearing, the court
denied defendant's posttrial motion and sentenced defendant to a 5 year prison term for indecent

solicitation of a child, to run concurrently with consecutive prison terms of 45 years for predatory criminal sexual assault of a child and 5 years for aggravated criminal sexual abuse. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 3    Defendant appeals, contending his 45-year sentence for predatory criminal sexual assault of a child (1) was excessive and (2) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).  We affirm.

¶ 4                                        I. BACKGROUND

¶ 5    Counts I through VI of the State's September 2020 complaint each asserted defendant committed predatory criminal sexual assault of a child between June 23, 2015, and September 1, 2019, and the victim was C.J.M. (born in June 2009).  720 ILCS 5/11-1.40(a)(1) (West 2014).  The other three charges alleged, between August 1, 2019, and August 15, 2020, defendant committed indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2018)) (count VII), sexual exploitation of a child (720 ILCS 5/11-9.1(a)(2) (West 2018)) (count VIII), and battery (720 ILCS 5/12-3(a) (West 2018)) (count IX) against N.R.C. (born in September 2005). In its October 2020 supplemental information, the State charged, between May 1, 2017, and September 5, 2019, defendant, who was 17 years of age or older, knowingly committed an act of sexual contact, however slight, with N.R.C., who was under the age of 13, by placing his penis on N.R.C.'s hand for the purposes of sexual gratification or arousal of N.R.C. or defendant (count X).  720 ILCS 5/11-1.40(a) (West 2016).  The other two charges asserted, between May 1, 2017, and September 5, 2019, defendant committed aggravated criminal sexual abuse of N.R.C. (counts XI and XII).  720 ILCS 5/11-1.60(c)(1)(i), (d) (West 2016)).  Later, at the State's request, the trial court dismissed counts VI, IX, and XII.

¶ 6    In January 2022, the trial court commenced a bench trial on the remaining charges

against defendant. The State presented the testimony of the following: (1) Jenny D., N.R.C.'s mother; (2) N.R.C.; (3) Zachary Benning, a Livingston County sheriff's detective; (4) C.J.M.; (5) Amanda M., C.J.M.'s mother; (6) Dr. Channing Petrak, medical director of the Pediatric Resource Center; (7) Megan Workman, a forensic interviewer at the McLean County Children's Advocacy Center, and (8) Ryleigh K., N.R.C.'s friend. Defendant testified on his own behalf and presented the testimony of the following: (1) Robert S., his father; (2) Dianna S., his mother; and (3) Renee D., Jenny's sister. The evidence relevant to the issues on appeal follows.

¶ 7 Jenny testified Renee had dated defendant and had two children with him. At the time of trial, Jenny had known defendant for seven years and had considered him family until August 2020. On August 21, 2020, N.R.C. approached Jenny and spoke with her. She was crying and "kind of shaky." After their conversation, an altercation occurred between Matt C., N.R.C.'s father, and defendant. The police were then called. Jenny had considered defendant family and trusted him with N.R.C. In early 2017, defendant and Renee had helped Jenny and Matt switch bedrooms in their home. Between May 2017 and September 2019, N.R.C. would spend the night with defendant, Renee, and defendant's daughter, C.J.M. Jenny testified N.R.C. never liked being alone with defendant and had expressed not liking him.

¶ 8 N.R.C. testified, while her parents were moving things around the house, several incidents took place between her and defendant. N.R.C. was in fourth grade at the time. During the first incident, defendant put his hand down her jeans and touched her butt beneath her underwear while she stood in the kitchen. The second incident occurred when N.R.C. and defendant were in a bedroom. There, defendant told her to look down the laundry chute. When she did so, defendant put his hand on her butt over her clothes. The third incident took place when N.R.C. was sitting alone in the living room and could see the doorway to the bathroom.

Defendant opened the door to the bathroom and had his penis out. N.R.C. explained defendant's pants were down around his thighs and she could see his penis. N.R.C. testified defendant "was playing with it," which she described as "kind of like swinging it around." Defendant chased her with his penis in his hands, and she ran under the dining room table. Defendant told her it was okay to touch his penis. Defendant tried getting N.R.C. to touch his penis. Eventually, he returned to the bathroom. Last, defendant touched her butt over her nightgown when he was playfully throwing her on the couch. N.R.C. testified other children were present during the last incident.

¶ 9          N.R.C. testified about other occasions in which she observed defendant's penis. One time was at defendant's home in Odell, Illinois, which, like her house, had a bathroom near the living room. N.R.C. again saw defendant standing in the doorway of the bathroom with his pants down and playing with his penis. N.R.C. also testified about a time defendant took N.R.C. and her friend Ryleigh on a golf cart ride. Defendant would only let her drive the golf cart if she sat on his lap. As she went to sit down, N.R.C. saw defendant's penis was partially sticking out of the top of his shorts. N.R.C. sat in front of defendant, and defendant used his hands to help her guide the golf cart. Additionally, N.R.C. testified about a time she saw defendant with his penis out of his shorts while sitting on a couch. Another time, she observed defendant playing with his penis while he sat on a staircase. At that time, defendant was going back and forth with his hand on his penis.

¶ 10         On another occasion at her house, N.R.C. was trying to sleep on the couch. N.R.C. had her back to the couch and her hands near her face. Defendant was helping her father with something and came into the room with his penis out. N.R.C. was pretending to sleep and had her eyes partially opened. N.R.C. saw defendant with his hand on his penis and he was

- 4 -

messing with it.  Defendant then rubbed his penis back and forth along the back of her fingers.  According to N.R.C., the encounter lasted a couple of minutes and ended when her father called out to defendant.

¶ 11            Moreover, N.R.C. testified about a time she was taking a shower in defendant's home in Odell, and he walked into the bathroom with his cell phone.  N.R.C. saw a flash and assumed defendant had taken a photograph of her.  She also testified about a time defendant showed her a pornographic video of him and her aunt Renee.

¶ 12            N.R.C. did not tell her parents about the incidents because defendant threatened her.  N.R.C. first told a friend and C.J.M. about the incidents.  In August 2020, she told her aunt Renee and her mother about the incidents with defendant.  N.R.C. attended eighth grade in 2020, and the incidents all happened before seventh grade because she stopped going to defendant's home when she entered seventh grade.

¶ 13            Renee, defendant's witness, testified she could not "put a number on" the times defendant was around N.R.C. because Renee would visit Jenny frequently.  Most of the time when defendant was with N.R.C., Renee, her children, N.R.C.'s parents, and N.R.C.'s siblings, once they were born, were also present.  She did not recall if defendant helped Jenny and Matt move furniture in 2017.  Renee testified N.R.C. would come over to her and defendant's home.  She was not present all of the time when defendant was with N.R.C.

¶ 14            Defendant testified he had known N.R.C. since 2013 and denied ever being alone with her.  He recalled helping Jenny and Matt move furniture around their home.  Except for breaks to smoke cigarettes, he and Matt worked continuously.  Defendant denied touching N.R.C.'s butt that day.  He also denied exposing his penis to N.R.C. and asking her to touch it.  Defendant further testified he was never without Renee on the golf cart if children were riding in

it.

¶ 15    In rebuttal, Ryleigh testified defendant would let her and N.R.C. drive the golf cart when no other adults were in it.

¶ 16    On July 29, 2022, the trial court entered a written order finding defendant guilty of all of the remaining counts involving N.R.C. (counts VII, VIII, X, XI). The court found defendant not guilty of the counts related to C.J.M. Defendant filed a posttrial motion challenging the guilty findings.

¶ 17    At a joint hearing on November 30, 2023, the trial court denied defendant's posttrial motion. As to sentencing, the State presented the presentence investigation report, a victim impact statement by Jenny, and the testimony of Detective Benning. The presentence investigation report showed defendant was 31 years of age and had felony convictions for carrying/possessing firearms at school, possession of a controlled substance, and retail theft. He also had misdemeanor convictions for criminal trespass to a vehicle, theft, and criminal sexual abuse. In Jenny's victim impact statement, she noted defendant's actions had impacted her, Matt, N.R.C., and the extended family. As to N.R.C., Jenny noted, "She has shut herself off from family." She also stated N.R.C. has been "traumatized."

¶ 18    Detective Benning testified, during the course of his investigation of the charges in this case, he learned defendant was a registered sex offender. As such, defendant had to register where he was staying if he was gone for more than three nights from his registered address. The police went to defendant's registered address every day from August 28 to September 1, 2022, looking for him, and defendant was not present and had not registered a new address. On September 1, 2022, defendant's father was interviewed and told police, on August 28, 2022, defendant had left his vehicle with him and stated he was going on vacation. Detective

Benning also learned of a possible solicitation of a murder for hire by defendant.  An inmate in the county jail told Detective Benning defendant had asked him if he knew a hit man.  Defendant asked additional questions about the hit man and indicated he "wanted to take care of one of his baby mamas."  An undercover cop posed as the hit man and recorded his conversations with defendant.  Detective Benning recognized defendant's voice on the recordings and heard defendant indicate it was Renee he wanted "taken out."  Defendant gave his fellow inmate a map drawn by him of Renee's residence.  The undercover cop received $500 from a Walmart-to-Walmart transfer, allegedly from defendant.  When questioned by Detective Benning about the murder-for-hire plot, defendant replied he only stated he wanted Renee killed because the inmate had threatened to hurt defendant's children if he did not say that or transfer the money.

¶ 19        Defendant presented eight character letters and made a statement in allocution.  In his statement in allocution, defendant persisted in claiming his innocence and emphasized he was hard-working and a family man.  He described his children as his "world."  He apologized to everyone who had been a part of the proceedings.

¶ 20        After hearing the parties' arguments, the trial court sentenced defendant to 5 years' imprisonment for indecent solicitation of a child, to run concurrent with consecutive prison terms of 45 years for predatory criminal sexual assault of a child and 5 years for aggravated criminal sexual abuse.  Since the sexual exploitation of a child count was a misdemeanor, the court only entered a judgment of conviction on that count.  Defendant filed a motion to reconsider his sentence arguing his sentence was excessive because the court improperly considered an alleged subsequent crime.  After a March 29, 2023, hearing, the court denied the motion to reconsider noting the subsequent solicitation of murder charge was not a significant factor in sentencing.  The court explained it had referenced the murder-for-hire plot in

regard to defendant's credibility.

¶ 21 On March 29, 2023, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 22                                    II. ANALYSIS

¶ 23                                 A. Excessive Sentence

¶ 24 We first address defendant's contention his 45-year sentence for predatory criminal sexual assault of a child was excessive. The State disagrees.

¶ 25 The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In sentencing a defendant, the circuit court must consider a number of statutory aggravating and mitigating factors. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). However, "the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430.

¶ 26 With excessive sentence claims, this court has explained appellate review of a defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the

- 8 -

proper forum for the determination of a defendant's sentence, and the trial court's

decisions in regard to sentencing are entitled to great deference and weight.

[Citation.] Absent an abuse of discretion by the trial court, a sentence may not be

altered upon review. [Citation.] If the sentence imposed is within the statutory

range, it will not be deemed excessive unless it is greatly at variance with the

spirit and purpose of the law or is manifestly disproportionate to the nature of the

offense. [Citation.]" (Internal quotation marks omitted.) *People v. Price*, 2011 IL

App (4th) 100311, ¶ 36, 958 N.E.2d 341.

See also *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). The

sentencing range for predatory criminal sexual assault of a child is 6 to 60 years' imprisonment

(720 ILCS 5/11-1.40(b)(1) (West 2022)). Thus, defendant's 45-year prison sentence was within

the proper statutory range.

¶ 27　　　　Defendant asserts his 45-year sentence is excessive because (1) it is grossly

disproportionate to the seriousness of the offense, (2) the trial court gave inadequate

consideration to the evidence in mitigation, (3) the court placed undue weight on deterrence, and

(4) it is a *de facto* life sentence.

¶ 28　　　　The record shows the trial court considered the appropriate factors in aggravation

and mitigation. The court specifically stated it had considered the presentence investigation

report (containing defendant's age and criminal record), the letters, the victim impact statement,

defendant's statement in allocution, and counsel's arguments. The court expressly explained

why a sentence towards the lower end of the sentencing range was not appropriate. It stated the

following:

"So when I consider this, I don't think this is a low end given your prior record, given the fact that you are a registered sex offender at the time, given your current record, given that deterrence is perhaps one of the strongest factors in this case, given that you held a position of trust and authority with this young lady and caused very serious harm to her, given the fact that I can't find one mitigating factor that is present, and given the fact that I do firmly believe that the public needs to be protected from you, I think that a sentence in the higher range is much more appropriate in this case."

Thus, even though the offense at issue did not involve sexual penetration of the victim, the court set forth numerous reasons why a sentence towards the lower end of the sentencing range was not appropriate.

¶ 29     In its aforementioned explanation, the trial court's comment it did not find a mitigating factor does not indicate a failure to consider the factors in mitigation or the mitigating evidence presented at the sentencing hearing. Moreover, its comment "deterrence is perhaps one of the strongest factors in this case" does not indicate the court found deterrence was more important than the seriousness of the offense. Before the aforementioned comment, the court had addressed the seriousness of the offense. Also, defendant's record and prior sex crime indicate a decreased rehabilitative potential. Defendant's arguments on appeal essentially ask this court to substitute our judgment for that of the trial court by reweighing the relevant factors, which is "an improper exercise of the powers of a reviewing court." *Alexander*, 239 Ill. 2d at 214-15, 940 N.E.2d at 1067.

¶ 30     Based on our review of the record, we find defendant's 45-year sentence for predatory criminal sexual assault of a child was not "greatly at variance with the spirit and

purpose of the law or *** manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Price*, 2011 IL App (4th) 100311, ¶ 36. Accordingly, the trial court did not abuse its discretion in sentencing defendant to 45 years' imprisonment for predatory criminal sexual assault of child.

¶ 31                                  B. Proportionate Penalties

¶ 32          Defendant also contends his conviction and sentence for predatory criminal sexual assault of a child violates the proportionate penalties clause.

¶ 33          Constitutional challenges are divided into two categories: facial and as-applied. *People v. Rizzo*, 2016 IL 118599, ¶ 24, 61 N.E.3d 92. Our supreme court has emphasized the two types of challenges are not interchangeable, and fundamental distinctions between them exist. *Rizzo*, 2016 IL 118599, ¶ 24. Moreover, a defendant may establish a violation of the proportionate penalties clause in two manners. *People v. Sharpe*, 216 Ill. 2d 481, 521, 839 N.E.2d 492, 517 (2005). The defendant may argue the penalty for a particular offense is (1) too severe, which is judged under the " 'cruel or degrading' standard," or (2) harsher than the penalty for a different offense that contains identical elements. *Sharpe*, 216 Ill. 2d at 521, 839 N.E.2d at 517. Here, defendant raises both a facial and as-applied challenge under the identical elements test.

¶ 34          With his facial challenge, defendant recognizes the Second District, in *People v. Johanson*, 2023 IL App (2d) 210690, ¶¶ 19-20, 211 N.E.3d 902, found the penalty for predatory criminal sexual assault of a child on its face did not violate the proportionate penalties clause under the identical elements test when compared to aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)). However, he asserts the reasoning in *Johanson* conflicted with supreme court precedent. Given that argument, we held this case in abeyance until our supreme

- 11 -

court rendered its decision in *Johanson*. The supreme court agreed with the Second District the two offenses do not contain identical elements. *People v. Johanson*, 2024 IL 129425, ¶ 14. As such, the penalty for predatory criminal sexual assault of a child does not on its face violate the proportionate penalties clause.

¶ 35 Defendant also points out the facts asserted in the State's predatory criminal sexual assault of a child charge in his case also satisfy the elements of aggravated criminal sexual abuse. That argument is an as-applied challenge, which is not appropriate under the identical elements test. *Johanson*, 2024 IL 129425, ¶ 16; *People v. Melvin*, 2023 IL App (4th) 220385, ¶ 29.

¶ 36 Accordingly, defendant has failed to establish his sentence for predatory criminal sexual assault of a child violates the proportionate penalties clause.

¶ 37                    III. CONCLUSION

¶ 38 For the reasons stated, we affirm the Livingston County circuit court's judgment.

¶ 39 Affirmed.